NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0682n.06

No. 11-5232

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*Jun 26, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| CROSSVILLE MEDICAL ONCOLOGY, P.C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| DAVID C. TABOR, M.D., | ) | MIDDLE DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GLENWOOD SYSTEMS, LLC, dba | ) | |
| Glenwood Systems, Inc., | ) | |
| | ) | |
| Defendant-Appellee. | ) | |

Before: SILER and KETHLEDGE, Circuit Judges; GRAHAM, District Judge.[*]

GRAHAM, District Judge. This case concerns the issue of what a party must do to reserve for judicial determination the question of whether a dispute is arbitrable. Glenwood Systems, Inc. filed a counterclaim in arbitration against non-claimant Dr. David C. Tabor. During a preliminary arbitration hearing, Dr. Tabor made an oral objection that he was not a proper party to the arbitration. Because we find that Dr. Tabor did not clearly and unmistakably agree to submit the question of

---

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

arbitrability of the counterclaim to the arbitrator, we reverse the district court's grant of summary judgment to Glenwood in its action to confirm the arbitration award.

I.

Crossville Medical Oncology, P.C., whose sole shareholder is Dr. Tabor, brought suit in 2004 against Glenwood Systems, LLC d/b/a Glenwood Systems, Inc. for claims relating to a medical billing services agreement. The district court determined that an arbitration clause in the agreement required Crossville and Glenwood to arbitrate their dispute.

Crossville filed an arbitration demand against Glenwood with the American Arbitration Association ("AAA") in March 2006. Glenwood then filed a counterclaim in arbitration against both Crossville and Dr. Tabor. On May 15, 2006, the AAA sent a letter to counsel acknowledging receipt of Glenwood's answering statement and counterclaim. The letter noted Glenwood's request that Dr. Tabor be named as a claimant and instructed Crossville to submit any comments on the request by May 18, 2006. The letter also stated: "In the absence of the agreement of the parties, or unless directed by a court of competent jurisdiction, the Association will continue to administer this matter as originally filed, and the issue may be addressed with the Arbitrator upon appointment."

A preliminary arbitration hearing was held by telephone on August 21, 2006. Counsel for Crossville stated an objection that Dr. Tabor was "not a proper party" to the arbitration. The AAA's October 12, 2006 case management letter, which reflected the matters discussed in the hearing, noted as follows: "David Tabor, MD, a defendant in the counterclaim, who alleges that he has not agreed to arbitration of claims against him, may file an objection to arbitration or a consent to it any time."

Dr. Tabor did not file a consent to have the counterclaim heard by the arbitrator, nor did he assert any further objections to the authority of the arbitrator. Though Glenwood made discovery requests of Dr. Tabor and continued to claim that he should be held individually liable, Dr. Tabor

did not respond to those requests or assertions. Dr. Tabor did give testimony during the arbitration proceedings, but he claims that he did so strictly in his capacity as president and sole shareholder of Crossville.

The arbitrator issued an award against Dr. Tabor, individually, in the amount of $221,147.45. The arbitrator's decision did not discuss whether Dr. Tabor had agreed to submit to arbitration. The arbitrator found that Dr. Tabor had breached the billing services agreement and further found that he should be held individually liable because he had signed the agreement without any indication that he was doing so on behalf of Crossville.

The district court granted summary judgment to Glenwood in its action to confirm the arbitrator's award as a judgment. The court held that Dr. Tabor had acquiesced to arbitration because he failed to follow the AAA's rules on objecting to an arbitrator's jurisdiction.

## II.

### A.

Where a district court enforces or refuses to vacate an arbitration award, this court reviews findings of fact for clear error and questions of law *de novo*. *Cleveland Elec. Illuminating Co. v. Util. Workers Union of Am., Local 227*, 440 F.3d 809, 812 (6th Cir. 2006).

The issue of arbitrability is one for judicial determination unless the parties "clearly and unmistakably provide otherwise." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986). "[T]he question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about *that* matter. Did the parties agree to submit the arbitrability question itself to arbitration?" *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (emphasis in original). As to this issue "the law reverses the presumption" in favor of arbitration. *Id*. at 944-45. The presumption thus is that the question of arbitrability is for judicial determination unless there

is clear and unmistakable evidence to the contrary. *Id*. Courts must interpret "silence or ambiguity" on the matter in favor of a judicial determination of the question of arbitrability. *Id*.

In *First Options* the parties to an agreement containing an arbitration clause went to arbitration, but the Kaplans, who had not signed the agreement, "filed written objections" with the arbitration panel over its ability to arbitrate their dispute with First Options. *First Options*, 514 U.S. at 941. The Court held that the Kaplans' written objections to the arbitration panel constituted sufficiently "forceful[]" opposition to conclude that they did not clearly and unmistakably agree to submit the question of arbitrability to the arbitration panel. *Id*. at 946.

In contrast, a party in arbitration who lodges no form of objection whatsoever is deemed to have acquiesced to the arbitrator's authority to determine the arbitrability of the dispute. *See Interstate Brands Corp. v. Chauffeurs, Teamsters, Warehousemen & Helpers Local Union No. 135*, 909 F.2d 885, 890 (6th Cir. 1990); *Vic Wertz Distrib. Co. v. Teamsters Local 1038*, 898 F.2d 1136, 1140 (6th Cir. 1990). In both *Interstate Brands* and *Vic Wertz*, the parties went to arbitration without first litigating the arbitrability issue in court. And in both cases, the Sixth Circuit ruled that the parties clearly and unmistakably submitted the issue of arbitrability to the arbitrator because they had not sought an initial determination by a court and had participated in the arbitration proceedings without contesting the arbitrator's authority to resolve the matter. *See Interstate Brands*, 909 F.2d at 890; *Vic Wertz*, 898 F.2d at 1140.

The same result was reached in *Cleveland Electric*. The parties there went to arbitration to resolve a labor dispute, and "[i]mportantly, at arbitration, Cleveland Electric did not argue that the arbitrator had no authority to decide the issue of arbitrability." 440 F.3d at 811. Cleveland Electric's conduct, therefore, was distinguishable from that of the Kaplans in *First Options*: "we can find nothing in the record to indicate that Cleveland Electric wanted to reserve the question of

arbitrability for the court. *Id*. at 813. The court thus held that "Cleveland Electric waived the issue of who had the power to decide the arbitrability of the retirees' grievance by submitting the matter to arbitration 'without reservation.'" *Id*. at 813-14 (quoting *Vic Wertz*, 898 F.2d at 1140).

B.

We find that Dr. Tabor did not clearly and unmistakably agree to submit the arbitrability question to the arbitrator. Dr. Tabor expressly objected that he was "not a proper party to the arbitration" and had "not agreed to arbitration of claims against him." Unlike Cleveland Electric, Dr. Tabor made known his objection to the arbitrability of the dispute and did so early in the arbitration proceedings.

Glenwood emphasizes that Dr. Tabor's objection was not as "forceful" as the objection in *First Options* – the distinction being that Dr. Tabor's objection was not written. We do not believe, however, that the controlling aspect of *First Options* was that the Kaplans made their objection in writing. Rather, what matters here is that Dr. Tabor expressed his intent not to arbitrate the arbitrability issue by communicating his objection to both the arbitrator and the opposing party. *See First Options*, 514 U.S. at 945 (noting the principle that "a party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration").

Glenwood also makes much of the fact that Dr. Tabor missed opportunities, both before and after the August 2006 hearing, to have stated or reiterated his objection to the arbitrator's authority to arbitrate the counterclaim. Factually, Glenwood is correct. The AAA's May and October 2006 letters invited comment from Dr. Tabor, who provided none. Even so, Dr. Tabor did make an objection in August 2006 and his non-response to the letters must be viewed in light of the Supreme Court's directive to resolve silence and ambiguity in favor of a judicial determination of the question of arbitrability.

The May 2006 letter informed Dr. Tabor that unless otherwise agreed by the parties or ordered by a court,[1] the AAA would "continue to administer this matter as originally filed." Dr. Tabor interpreted the letter to mean that the arbitration would go forward as originally filed by Crossville against Glenwood. This interpretation is plausible and any ambiguity must be resolved in favor of a judicial determination of the arbitrability question.

The October 2006 letter recognized Dr. Tabor's position that he had not agreed to the arbitrability of the counterclaim. The letter stated that he could file an objection or a consent at any time. Dr. Tabor filed neither an objection nor a consent in response to the letter. Once having already made an objection known, Dr. Tabor's act of silence should be construed under *First Options* in favor of a judicial determination of the arbitrability question.

Dr. Tabor undoubtedly could have more vigorously pursued a judicial determination of whether the dispute was arbitrable. Crossville interrupted the arbitration proceeding by moving in the district court to reopen the case on the grounds that Glenwood Systems, LLC was not a party to the arbitration agreement. Though knowing at the time that Glenwood had asserted a counterclaim in arbitration against Dr. Tabor, Crossville did not seek leave to add him as a plaintiff or otherwise seek from the district court a determination as to the arbitrability of the counterclaim.

Nonetheless, that Dr. Tabor could have been more forceful or employed better tactics to pursue his objection does not compel the conclusion that he unmistakably agreed to submit the arbitrability issue to the arbitrator. Indeed the Court in *First Options* rejected an argument that the

---

[1] It appears the arbitrator may have been under the mistaken belief that this court had otherwise ordered that the dispute between Glenwood and Dr. Tabor go to arbitration. The arbitrator's January 2010 decision stated that *Crossville Medical Oncology, P.C. v. Glenwood Systems, LLC,* No. 08-5003 (6th Cir. Feb. 17, 2009) had "established" the "arbitrability of the present dispute." That decision, however, was limited to the arbitrability of the dispute between Crossville and Glenwood.

Kaplans should have obtained an independent court decision on the question of arbitrability "by trying to enjoin the arbitration, or by refusing to participate in the arbitration and then defending against a court petition First Options would have brought to compel arbitration." *First Options*, 514 U.S. at 946. A court should give foremost consideration to a party's intent to submit the arbitrability question to the arbitrator. *See id*. (noting that the Kaplans' failure to use better tactics "simply does not say anything about whether [they] intended to be bound by the arbitrators' decision").

Finally, Glenwood argues that Dr. Tabor waived his objection to the jurisdiction of the arbitrator because he did not follow the procedure for stating such an objection under Rule 7(c) of the AAA's Rules for Commercial Arbitration. But when a party objects to the arbitrator's authority to decide the arbitrability issue in the first instance, *AT&T Technologies* and *First Options* provide that he has a right to judicial determination of the issue unless he and the other party have clearly and unmistakably agreed otherwise. That is, the analysis concerns contract formation principles, not procedural compliance with the AAA's rules. *See First Options*, 514 U.S. at 944. Only if the parties have agreed to arbitrate do the AAA's rules apply. *See MCI Telecomm. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426, 429-30 (1st Cir. 1998).

Applying those principles to the case at hand, we find that Dr. Tabor did not clearly and unmistakably agree to submit the arbitrability question to the arbitrator. By communicating an objection to the arbitrator's authority during a preliminary phase of the arbitration, Dr. Tabor reserved for judicial determination the question of arbitrability. While Glenwood argues, and prematurely so, that Dr. Tabor is bound by the arbitration agreement because he signed it in his individual capacity, Glenwood has not pointed to any contract language as being evidence of Dr. Tabor's intent to submit the arbitrability issue to the arbitrator. *Cf. Smith Barney, Inc. v. Sarver*, 108 F.3d 92, 96-97 (6th Cir. 1997) (holding that parties had not submitted arbitrability question to the

arbitrator merely because they had incorporated into their arbitration agreement § 35 of the Code of Arbitration Procedure for the National Association of Securities Dealers), *abrogated on other grounds by Vaden v. Discover Bank*, 556 U.S. 49 (2009).

III.

Accordingly, we REVERSE the district court's judgment and REMAND the case for the district court to determine whether Dr. Tabor is bound by the arbitration agreement.