NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0801n.06

Case No. 14-5193

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Oct 23, 2014
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| MILAN EXPRESS CO., INC., | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE WESTERN |
| APPLIED UNDERWRITERS CAPTIVE RISK | ) | DISTRICT OF TENNESSEE |
| ASSURANCE COMPANY, INC., | ) | |
| | ) | |
| Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

BEFORE: McKEAGUE and GRIFFIN, Circuit Judges; and POLSTER, District Judge.[*]

**McKEAGUE, Circuit Judge.** This action stems from a broken contractual relationship.

Plaintiff Milan Express Co., Inc. ("Milan"), a Tennessee corporation seeking workers'

compensation insurance coverage, entered into a Reinsurance Participation Agreement

("Agreement") with defendant Applied Underwriters Captive Risk Assurance Company, Inc.

("Applied Underwriters"). Applied Underwriters is organized under the laws of the British

Virgin Islands and has its principal place of business in Omaha, Nebraska. During the three-year

term of the Agreement, a dispute arose regarding payment of premiums and fees. When

negotiations between the parties failed, Milan commenced this action in federal court based on

---

[*] The Honorable Dan Aaron Polster, United States District Judge for the Northern District
of Ohio, sitting by designation.

the parties' diversity of citizenship, filing a seven-count complaint asserting claims for declaratory relief, reformation of the contract, fraudulent and negligent misrepresentation, breach of contract, and punitive damages.

The Agreement includes an arbitration clause requiring all disputes arising under the Agreement to be resolved informally without resort to litigation. Any dispute not amicably settled is subject to binding arbitration under the provisions of the American Arbitration Association in the British Virgin Islands or some other location agreed to by the parties. Hence, the filing of the complaint was followed closely by Milan's motion to stop arbitration. Milan contended that the arbitration clause is unenforceable under Nebraska law, which governs construction of the Agreement. Applied Underwriters responded with its own motion to compel arbitration, asking the district court to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6). In case the court were to grant Milan's motion to stop arbitration, Applied Underwriters also moved the court, in the alternative, to transfer venue to the District of Nebraska, in accordance with the Agreement's forum-selection clause.

The district court addressed all three motions in one order. The court denied Allied Underwriters' motions to compel arbitration and transfer venue, and granted Milan's motion to stop arbitration. The court concluded that (a) the question of arbitrability was for the court to resolve; (b) the arbitration clause is unenforceable under Nebraska law; and (c) the convenience of the parties and witnesses and the interests of justice weighed against transferring venue. Allied Underwriters timely appealed this interlocutory ruling under 28 U.S.C. § 1292(a)(1) as a grant of injunctive relief. *See Fazio v. Lehman v. Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (interlocutory order refusing to compel arbitration appealable under 9 U.S.C. § 16(a)(1)); *Buffler v. Electronic Computer Programming Inst., Inc.*, 466 F.2d 694, 699 (6th Cir. 1972) (order

- 2 -

enjoining arbitration appealable under 28 U.S.C. § 1292(a)(1)). Allied Underwriters contends that unless the arbitration clause itself is challenged as invalid, the question of arbitrability is for the arbitrator, not the court, to decide. Because we agree with Allied Underwriters on this point, we vacate the district court's order and remand for further proceedings not inconsistent with this opinion.

**I**

The parties agree that a court's ruling stopping or compelling arbitration is subject to de novo review. *See Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 716 (6th Cir. 2012); *Fazio*, 340 F.3d at 392. There is no dispute that the Agreement includes an arbitration clause whereby the parties agreed to submit all disputes regarding execution, construction, enforceability, and breach of the Agreement to arbitration under the rules of the American Arbitration Association. Nor is there any dispute that some, if not all, of Milan's claims facially come within the scope of the ¶ 13 dispute resolution provisions.

The Agreement expressly provides that it "shall be exclusively governed by and construed in accordance with the laws of Nebraska." Under Nebraska law, a provision in a written contract to submit any controversy to arbitration is valid and enforceable, Neb. Rev. Stat. § 25-2602.01(b), except when the written contract is an agreement relating to an insurance policy other than a contract between insurance companies, Neb. Rev. Stat. §25-2602.01(f)(4). The district court held that because the instant Agreement relates to an insurance policy and is not a contract between insurance companies, the arbitration clause in the Agreement is rendered unenforceable by this Nebraska statute.

In so ruling, the district court rejected Applied Underwriters' argument that even this "gateway" arbitrability question was a matter the parties agreed to submit to the arbitrator for

decision. The court held arbitrability was within the court's province because the language of the Agreement does not amount to sufficiently "'clear and unmistakable' evidence that contracting parties intended an arbitrator (rather than a court) to resolve questions of arbitrability." R. 55, Order at 13, Page ID 784 (quoting *Solvay Pharms., Inc. v. Duramed Pharms., Inc.*, 442 F.3d 471, 477 (6th Cir. 2006)). In this the court erred.

The district court did not explain what is not "clear and unmistakable" in the following language:

> It is the express intention of the parties to resolve *any* disputes arising under this Agreement without resort to litigation . . .

> *Any* dispute or controversy that is not resolved informally . . . shall be fully determined in the British Virgin Islands under the provisions of the American Arbitration Association.

> *All* disputes between the parties relating in *any* way to (1) the execution and delivery, construction or enforceability of this Agreement, (2) the management or operations of the Company, or (3) any other breach or claimed breach of this Agreement or the transactions contemplated herein shall be settled amicably by good faith discussion among all of the parties hereto, and, failing such amicable settlement, finally determined *exclusively* by binding arbitration in accordance with the procedures provided herein. The reference to this arbitration clause in any specific provision of this Agreement is for emphasis only, and is not intended to limit the scope, extent or intent of this arbitration clause, or to mean that any other provision of this Agreement shall not be fully subject to the terms of this arbitration clause. *All* disputes arising with respect to any provision of this Agreement shall be fully subject to the terms of the arbitration clause.

> The arbitration clause shall survive the termination of this Agreement and be deemed to be an obligation of the parties which is independent of, and without regard to, the validity of this Agreement.

R. 1-4, Agreement at ¶ 13, Page ID 43–45 (emphasis added).

According to this language, the parties mutually and comprehensively agreed to resolve any and all Agreement-related disputes, including questions of enforceability, without resort to litigation, through informal settlement negotiations and, barring settlement, exclusively through

binding arbitration. As Applied Underwriters has argued, this language is not unlike the language at issue in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67–70 (2010), that was deemed to satisfy the "clear and unmistakable" requirement. The requirement is an "interpretive rule" pertaining to the parties' manifestation of intent, designed to facilitate enforcement of arbitration agreements, like other contracts, according to their terms. *Id.* at 67–68, 70 n.1.

In this case, the district court did not identify what it found to be ambiguous about the parties' manifest intent to submit *all* disputes, including disputes regarding the *enforceability* of *any* provision, *exclusively* to arbitration. Although Applied Underwriters cited *Rent-A-Center* and argued the point below—both in support of its motion to compel arbitration and its objections to the magistrate judge's "report and recommendation"—the district court's opinion is devoid of reference to *Rent-A-Center*. This oversight contributed to the district court's erroneous determination that arbitrability was for the court to decide in the first instance.

Conversely, we conclude, in reliance on *Rent-A-Center*, and on de novo review of the clear and unambiguous language of the Agreement, that the parties manifestly intended to submit the threshold question of arbitrability to the arbitrator. This agreement, too, is enforceable like any other contract in accordance with its terms. *See Nitro-Lift Technologies, L.L.C. v. Howard*, 133 S.Ct. 500, 503 (2012) (reaffirming that apart from attacks on the "validity" of the arbitration clause itself, which are subject to court determination, "judicial hostility towards arbitration" must give way to the parties' express agreement to arbitrate contractual disputes); *Teamsters Local Union 480 v. United Parcel Service, Inc.*, 748 F.3d 281, 288–89 (6th Cir. 2014) (recognizing that the presumption in favor of arbitration extends even to attacks on the validity of the contract as a whole and that only questions going to the "formation" of the arbitration

clause itself—i.e., whether the parties ever agreed to the arbitration clause in the first place—are for the courts to decide).

Milan's opposition is not persuasive. Milan attempts unsuccessfully to distinguish the language of Agreement ¶ 13 from the language addressed in *Rent-A-Center*, which provided: "[t]he Arbitrator . . . shall have exclusive authority to resolve any dispute relating to the . . . enforceability . . . of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable." *Rent-A-Center*, 561 U.S. at 68. Comparing this language to Agreement ¶ 13, we discern no material difference. Milan contends the *Rent-A-Center* language is distinguishable because it appears in an underlying contract that is itself an arbitration agreement. The Supreme Court addressed and summarily rejected this very argument in *Rent-A-Center*. *Id.* at 72 ("In this case, the underlying contract is itself an arbitration agreement. But that makes no difference."). *Rent-A-Center* thus defeats Milan's position.

Milan's reliance on other authorities is no more helpful. In *Crossville Medical Oncology, P.C. v. Glenwood Systems, LLC*, 485 F. App'x 821 (6th Cir. 2012), for instance, we held that a party had not clearly and unmistakably agreed to submit the question of arbitrability to the arbitrator. However, that party, a counterclaim defendant, was not a party to the subject arbitration agreement and had, early in the arbitration proceedings, lodged his objection, asserting that he was not a proper party to the arbitration and did not agree to arbitration of the claims against him. Here, in contrast, Milan undeniably entered into a written contract that contains Milan's express agreement to submit *all* disputes arising under the contract to arbitration.

In still other cases cited by Milan, presenting language similar to that addressed in *Rent-A-Center*, the courts applied the teaching of *Rent-A-Center* and enforced the agreements as

sufficiently "clear and unmistakable." *See, e.g.*, *Dean v. Draughons Junior College, Inc.*, 2012 WL 3308370 at *4–5 (M.D. Tenn.); *Muhammad v. Advanced Servs., Inc.*, 2010 WL 3853230 at *3–5 (W.D. Tenn.). Milan's efforts to avoid the consequences of its own commitment find little support in the case law. Accordingly, we hold that the Agreement is sufficiently clear and unambiguously manifests the parties' agreement to submit the question of arbitrability to arbitration.

There is a second caveat, however. A court must first resolve any challenge to the *validity* of an arbitration agreement before it may order compliance with the agreement. *Rent-A-Center*, 561 U.S. at 70–71. That is, any challenge to the validity of the arbitration agreement specifically—on "such grounds as exist at law or in equity for revocation of any contract," such as, for instance, that it is unconscionable or was induced by fraud—must be resolved by the court before ordering compliance with the arbitration agreement. *Id.*; *see also Fazio*, 340 F.3d at 393 (the court has the duty—in the face of a challenge based on forgery, unconscionability, or lack of consideration—to ensure a valid agreement to arbitrate exists).

Milan has not asserted such a challenge to the validity of the arbitrability agreement, specifically (or the Agreement as a whole), on grounds that would warrant revocation. Rather, Milan's challenge, to the arbitration clause as a whole, is limited to the argument that it is unenforceable under Nebraska law. Milan *may* be right about this, but enforceability is a question the parties expressly agreed to submit to arbitration, an agreement Milan has not challenged on fraud or unconscionability grounds. It follows that the claims asserted in Milan's complaint are, per the parties' express agreement, subject to resolution exclusively by settlement negotiation and binding arbitration, not by litigation. We thus conclude that the district court erred when it granted Milan's motion to stop arbitration.

**II**

The question remains whether Applied Underwriters is entitled to an order compelling arbitration. "Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts." *Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984). "Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate." *Id.* Where the parties have agreed to arbitrate in a particular forum, only a district court in that forum has jurisdiction to compel arbitration. *See Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003) (citing *Mgmt. Recruiters Int'l, Inc. v. Bloor*, 129 F.3d 851, 854 (6th Cir. 1997)). Here, the parties expressly provided in the Agreement that arbitration proceedings shall be conducted in the British Virgin Islands or at some other location agreed to by the parties.

The district court thus lacked authority to specifically enforce the arbitration clause. It had two options. Insofar as the claims asserted stem from "disputes arising under the Agreement," and are therefore subject to arbitration, the court could have dismissed Milan's complaint without prejudice. We have approved this approach in several cases. *See, e.g., Green v. Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000); *Bowie v. Clear Your Debt, LLC*, 2012 WL 892607 at *5–6 (N.D. Ohio), *aff'd*, 523 F. App'x 315 (6th Cir. 2013); *Nestle Waters North America, Inc. v. Bollman*, 2006 WL 3690804 at *6 (W.D. Mich.), *aff'd*, 505 F.3d 498 (6th Cir. 2007).

Arguably, however, Milan's Count IV and V claims—for fraudulent and negligent misrepresentation—do not "arise under the Agreement." Though these claims stem from communications relating to the Agreement, they sound in tort and are arguably not subject to arbitration. Rather than dismissing the complaint in its entirety, the district court could have

decided to stay proceedings pending completion of arbitration on the arbitrable claims. *See Inland Bulk*, 332 F.3d at 1018. However, the suitability of each of these options has neither been fully briefed by the parties nor specifically addressed by the district court. As we vacate the district court's order and remand for further proceedings, we direct the district court to take up afresh the question of how best to move forward, in collaboration with the parties, and with the benefit of our ruling in Part I above.

## III

Applied Underwriters also challenges the district court's denial of the motion to transfer venue under 28 U.S.C. § 1404(a). The district court denied the motion to transfer only after granting Milan's motion to stop arbitration. The district court's venue ruling was thus premised on its determination that the arbitration clause was not enforceable under Nebraska law and that Milan's claims were subject to adjudication by the court. Evaluating the convenience of the parties and witnesses, as well as the interest of justice, the court refused to disturb Milan's choice of venue. The court acknowledged the Agreement's forum-selection clause, whereby the parties agreed that any dispute not subject to the dispute resolution provisions would be resolved exclusively by the courts of Nebraska. But the court held the forum-selection clause was not entitled to dispositive consideration.

This, Applied Underwriters argues, was error, citing *Atlantic Marine Construction Co. v. U.S. District Court for the Western District of Texas*, 134 S. Ct. 568 (2013). In *Atlantic Marine*, the Court held that a forum-selection clause changes the calculus and should be given controlling weight in all but the most exceptional cases. *Id.* at 581. The *Atlantic Marine* decision was issued seven weeks prior to the district court's venue ruling. It was neither cited by the parties

nor referred to in the district court's opinion. The clarification afforded in *Atlantic Marine* undeniably impugns the integrity of the district court's analysis.

We find it unnecessary, however, to address the merits of the venue ruling. The motion to transfer venue was filed in the alternative, in the event the district court granted Milan's motion to stop arbitration. Our ruling today, vacating the district court's order stopping arbitration, and remanding for further proceedings—on whether Milan's complaint should be dismissed in its entirety without prejudice or whether proceedings should be stayed pending completion of arbitration—effectively moots the transfer-of-venue issue. Moreover, it is doubtful that we may exercise pendent appellate jurisdiction to review the venue ruling anyway. *See Turi v. Main Street Adoption Services, LLP*, 633 F.3d 496, 501–03 (6th Cir. 2011) (concluding that related venue ruling was not so "inextricably intertwined" with properly reviewable arbitrability ruling as to justify exercise of pendent appellate jurisdiction over the venue ruling). We therefore refrain from addressing the merits of the district court's venue ruling.

**IV**

Accordingly, we **VACATE** the district court's order granting Milan's motion to stop arbitration, and **REMAND** the case for further proceedings not inconsistent with this opinion.