IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

APPLIED UNDERWRITERS V. MILAN EXPRESS CO.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC., APPELLANT,

V.

MILAN EXPRESS CO., INC., A TENNESSEE CORPORATION, APPELLEE.

Filed March 17, 2020.    No. A-18-570.

Appeal from the District Court for Douglas County: KIMBERLY MILLER PANKONIN, Judge. Affirmed.

Brian D. Nolan and Leslie S. Stryker Viehman, of Nolan, Olson & Stryker, P.C., L.L.O., and Daniel W. Olivas, of Lewis, Thomason, King, Krieg & Waldrop, P.C., for appellant.

Steven D. Davidson, of Baird Holm, L.L.P., and Scott D. Carey, of Baker, Donelson, Bearman, Caldwell & Berkowitz, P.C., for appellee.

MOORE, Chief Judge, and RIEDMANN and BISHOP, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Applied Underwriters Captive Risk Assurance Company, Inc. (AUCRA), and Milan Express Co., Inc., now known as Milan Supply Chain Solutions, Inc. (Milan), have been involved in a dispute for years over amounts AUCRA claims are owed from Milan under the parties' Reinsurance Participation Agreement (RPA). Two documents, the RPA and a Request to Bind Coverages & Services (Binder), were signed on the same day in September 2008, and both relate to Milan's purchase of workers' compensation insurance for its employees in Tennessee and other states. The RPA contained an arbitration clause subjecting any dispute or controversy to be determined in the British Virgin Islands under the provisions of the American Arbitration

- 1 -

Association (AAA). It also subjected Milan to the exclusive jurisdiction of Nebraska courts for the purpose of enforcing any arbitration award rendered, and also required the RPA to be exclusively governed by and construed in accordance with Nebraska laws. The Binder also contained an arbitration clause which provided that any dispute or controversy would be resolved by alternative dispute resolution and submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act (FAA) "in conformity with the Arbitration Act of the State of Nebraska." The Binder further provided that arbitration would be "in accordance with JAMS," and would be held in Omaha, Nebraska.

After efforts to resolve the controversy between the parties failed, Milan filed an action against AUCRA in a Tennessee federal district court in February 2013. AUCRA moved to compel arbitration, which was initially denied; AUCRA appealed to the United States Court of Appeals for the Sixth Circuit. The Sixth Circuit reversed the trial court and held that arbitrability under the RPA should be determined by an arbitrator. An AAA arbitration panel subsequently determined that the RPA was a contract concerning or relating to an insurance policy, and therefore based on Neb. Rev. Stat. § 25-2602.01(f)(4) (Reissue 2016) (prohibits enforcement of arbitration clauses in contracts concerning or relating to insurance policies), the panel concluded the RPA's arbitration clause was unenforceable. The "Final Award" from the AAA panel was executed on July 20, 2015. The Tennessee action was subsequently dismissed at AUCRA's request in February 2016.

About a month later, in March 2016, AUCRA filed the present action against Milan in the district court for Douglas County, Nebraska, for amounts allegedly owed to it by Milan pursuant to the terms of the RPA. However, this time in its request to stay the lawsuit pending arbitration, AUCRA claimed a right to arbitrate pursuant to the arbitration clause contained in the Binder rather than the arbitration clause contained in the RPA. Having been denied its right to arbitrate under the RPA as a result of the AAA arbitration panel's decision, it is apparent that AUCRA sought an alternative path to arbitration "in accordance with JAMS" as provided in the Binder. Milan filed a motion to stop arbitration, contending that the AAA arbitration panel's Final Award already addressed the same claims.

The district court determined that issue and claim preclusion barred AUCRA from compelling a second attempt at arbitration. The court granted Milan's motion to stop arbitration and denied AUCRA's motion to stay pending arbitration. AUCRA appeals. We affirm.

## II. FACTUAL BACKGROUND

Milan is a Tennessee corporation that provides transportation services. AUCRA is a British Virgin Islands corporation with its principal place of business in Omaha; AUCRA is apparently a subsidiary of Applied Underwriters, Inc. In 2008, Milan executed the Binder regarding a specific "EquityComp Quote." The Binder contemplated that Applied Underwriters, Inc., through its affiliates and/or subsidiaries, would provide to Milan "one or more workers' compensation insurance policies" that were "contingent" on Milan executing the RPA. Milan executed the related RPA with AUCRA, effective October 1. Under the RPA, AUCRA agreed to provide to Milan workers' compensation coverage in a "segregated protected cell reinsurance program." AUCRA had entered into a "Reinsurance Treaty" made up of other "Issuing Insurers" for a pooling

arrangement to collectively issue the workers' compensation coverage. AUCRA would "allocate a portion of the premium and losses" under the RPA to Milan's segregated protected cell.

The Binder and RPA each had arbitration clauses. At issue in this appeal is the Binder's arbitration clause, which states:

> [Milan] understands that AUCRA engages in alternative dispute resolution of conflicts. [Milan] further agrees that any claims, disputes and/or controversies between the parties involving the [Worker's Compensation Program Proposal & Rate Quotation (Proposal)] or any part thereof (including but not limited to the [RPA] and Policies [(workers' compensation policies identified in the Proposal)]) shall be resolved by alternative dispute resolution and submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act in conformity with the Arbitration Act of the State of Nebraska. Arbitration shall be in accordance with JAMS by a single arbitrator, with the arbitration held in Omaha, Nebraska. . . .

> This acknowledgement and disclosure is intended to confirm receipt of the Proposal and [Milan's] acceptance of the Proposal along with certain additional terms and conditions. Only the [RPA] and Policies [(workers' compensation policies identified in the Proposal)] contain the actual operative provisions. . . . The agreement to arbitrate, as set forth herein, is enforceable independent of any other [RPA and/or Policies in the Proposal] between AUCRA, its affiliates and [Milan].

Milan procured its workers' compensation insurance in accordance with the RPA and apparently made monthly payments from November 2008 until its last payment in May 2011. Litigation followed.

## III. PROCEDURAL BACKGROUND

### 1. INITIAL FEDERAL COURT AND ARBITRATION PROCEEDINGS

AUCRA filed a formal demand for arbitration with the AAA in 2012. Although not in our record, the parties direct us to other prior proceedings related to this case. In 2013, Milan filed a complaint in the U.S. District Court for the Western District of Tennessee, seeking similar relief to that requested in its present counterclaim concerning the RPA. See *Milan Express Co., Inc. v. Applied Underwriters Captive Risk Assurance Company, Inc.*, No. 1:13-cv-01069-JDB-egb, 2013 WL 12009699 (W.D. Tenn. Oct. 3, 2013). Among other things, in that case a federal magistrate judge granted Milan's motion to stop arbitration, finding the arbitration clause invalid under Nebraska law. The federal district court adopted that decision, analyzing, in part, that the court rather than an arbitrator had to determine the issue of arbitrability. See *Milan Exp. Co. v. AUCRA*, 993 F. Supp. 2d 846 (W.D. Tenn. 2014). AUCRA appealed to the U.S. Court of Appeals for the Sixth Circuit, which found that the parties manifestly intended to submit the threshold question of arbitrability to the arbitrator; thus, it vacated the order granting Milan's motion to stop arbitration and remanded the case for further proceedings. See *Milan Exp. Co., Inc. v. Applied Underwriters Captive Risk Assur. Co., Inc.*, 590 Fed. Appx. 482 (6th Cir. 2014).

The AAA's Final Award from July 2015, sets forth that the arbitration proceeded on the sole issue of whether the parties had an enforceable agreement to arbitrate disputes arising under

the RPA. The AAA panel found that the RPA was a contract concerning or relating to an insurance policy, and that Nebraska law, specifically § 25-2602.01(f)(4), prohibits enforcement of arbitration clauses in contracts concerning or relating to insurance policies. It therefore found that the RPA's arbitration clause was unenforceable under Nebraska law. Thereafter, AUCRA moved to vacate that award and to dismiss the case for forum non conveniens. See *Milan Express Co., Inc. v. Applied Underwriters Captive Risk Assurance Company, Inc.*, No. 13-1069-JDB, 2016 WL 407317 (W.D. Tenn. Feb. 2, 2016). The Tennessee federal district court, without comment on the arbitration award, granted AUCRA's motion to dismiss, finding that the matter could have only been brought in Nebraska state court. AUCRA appealed insofar as there was no ruling on the arbitration award's validity; we discuss the resolution of that appeal below, chronologically.

### 2. AUCRA INITIATES PROCEEDINGS IN DOUGLAS COUNTY DISTRICT COURT

AUCRA filed a complaint against Milan on March 7, 2016, in the Douglas County District Court, claiming Milan executed the RPA as part of acquiring workers' compensation insurance through AUCRA. Milan made monthly payments under the RPA, and its last payment was in 2011. AUCRA sought a judgment against Milan for money ($2,953,722.20 plus costs) that it claimed was owed under the RPA. A copy of the RPA was attached to and incorporated into the complaint. AUCRA simultaneously filed a "Request for Stay," asking that pursuant to the FAA, the district court stay litigation pending resolution of arbitration to take place before "JAMS" under the arbitration clause in the Binder. See 9 U.S.C. §§ 1 to 14 (2012) (FAA). AUCRA asserted that to effect the "EquityComp" program (as set forth in the RPA), Milan executed the Binder in which it agreed to resolve any claims by arbitration under the FAA.

Milan filed an answer, as well as a counterclaim which sought declaratory relief, raised claims of fraudulent/negligent misrepresentation and breach of contract, and sought damages, including punitive damages under Tennessee law. Milan simultaneously filed a "Motion to Stop Arbitration," claiming an AAA panel had already provided a Final Award which concluded the RPA's arbitration clause was not enforceable under Nebraska law.

AUCRA subsequently filed an "Amended Request for Stay," similar to its prior request for stay but noting the (second) appeal filed in the Sixth Circuit as another basis for the stay. AUCRA then filed a "Second Amended Request for Stay"; the only change from its earlier filings was that a copy of the Binder was attached to and incorporated into the motion in place of a copy of the RPA.

In May 2016, the district court entered an order on AUCRA's "Motion for Stay" and Milan's "Motion to Stop Arbitration." The district court granted the motion for stay based on the pending appeal before the Sixth Circuit. The parties were ordered to advise the district court upon receipt of any order or determination by the Sixth Circuit, after which the district court would set a status hearing to determine further action in the present matter.

### 3. SIXTH CIRCUIT DISMISSES PARTIES' CASE FROM FEDERAL COURT

In December 2016, the Sixth Circuit filed its order upon AUCRA's appeal concerning the federal district court's silence on AUCRA's motion to vacate the AAA arbitration award. See *Milan Express Co., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.*, 672 Fed. Appx.

553 (6th Cir. 2016). The Sixth Circuit viewed the inaction as the federal district court leaving the parties to pursue their remedies (and validity of the award) in their contractually agreed-upon forum of Nebraska. The Sixth Circuit declined to exercise appellate jurisdiction to rule on the validity of the arbitration award and dismissed the appeal.

### 4. FURTHER PROCEEDINGS IN DOUGLAS COUNTY DISTRICT COURT

In November 2017, a hearing took place before the Douglas County District Court. The record reflects that the matters to be addressed were AUCRA's motion to stay pending arbitration and Milan's motion to stop arbitration, which each remained outstanding as the district court had previously ruled on AUCRA's motion to stay only in part. Briefs were submitted and exhibits admitted into evidence (Binder; RPA; Milan's counterclaim in "JAMS" arbitration; and AAA's Final Award from 2015).

In February 2018, the district court entered an order upon the parties' motions. It noted Milan's arguments that issue and claim preclusion prevented AUCRA from compelling arbitration under the Binder and that the arbitration clause was invalid under Nebraska law. It also noted AUCRA's argument that the Binder was valid under federal law and that Tennessee state law was applicable to it rather than Nebraska law. The district court reached its decision to deny AUCRA's motion to stay pending arbitration and to grant Milan's motion to stop arbitration based on issue and claim preclusion principles. We will address the details of the court's decision in our analysis.

AUCRA filed a motion to alter or amend, challenging the applicability of preclusion principles, and claiming that the prior arbitration decision was limited to the RPA's arbitration clause. It asserted the Binder's arbitration clause was distinct from that in the RPA, did not have a choice-of-law clause, and was not subject to Nebraska law. AUCRA asked the district court to stay consideration of its motion pending a Nebraska Supreme Court case calling for interpretation of § 25-2602.01(f)(4). See *Citizens of Humanity v. Applied Underwriters*, 299 Neb. 545, 909 N.W.2d 614 (2018) (filed April 6). Two days after a May 9, 2018, hearing, the district court denied AUCRA's motion, stating no new reasoning for its denial; AUCRA timely appealed from that order.

## IV. ASSIGNMENTS OF ERROR

AUCRA claims, consolidated and restated, that the district court erred when it found that issue and claim preclusion barred it from enforcing the arbitration agreement in the Binder.

## V. STANDARD OF REVIEW

Arbitrability presents a question of law. *Cullinane v. Beverly Enters. - Neb.*, 300 Neb. 210, 912 N.W.2d 774 (2018). Whether a stay of proceedings should be granted and arbitration required is also a question of law. *Id.* Likewise, a jurisdictional issue that does not involve a factual dispute presents a question of law. *Id.* When reviewing questions of law, an appellate court resolves the questions independently of the lower court's conclusions. *Id.*

## VI. ANALYSIS

### 1. JURISDICTION

Earlier in this appeal, Milan filed a motion seeking dismissal of AUCRA's appeal for lack of jurisdiction. We denied Milan's motion, but preserved the issue of jurisdiction for consideration upon final submission. The parties were directed to address the issue of jurisdiction in their briefs, and they have done so. We conclude we have jurisdiction over AUCRA's appeal.

For an appellate court to acquire jurisdiction of an appeal, there must be a final order entered by the court from which the appeal is taken. See *id.* Under Neb. Rev. Stat. § 25-1902 (Reissue 2016), an order is final for purposes of appeal if it affects a substantial right and (1) determines the action and prevents a judgment, (2) is made during a special proceeding, or (3) is made on summary application in an action after judgment is rendered. Denial of a motion to compel arbitration under the FAA is a final, appealable order under Nebraska law, because it affects a substantial right and is made during a special proceeding. See *Cullinane v. Beverly Enters. - Neb., supra*.

Every order denying arbitration will not necessarily affect a substantial right; an order denying arbitration must affect an essential legal right that was available prior to the order, such as depriving the moving party of the contractual benefits of an arbitration agreement. See *Pearce v. Mutual of Omaha Ins. Co.*, 293 Neb. 277, 876 N.W.2d 899 (2016) (order denying motion to compel arbitration was not final order under § 25-1902; party failed to show existence of any arbitration agreement or legal authority for right to arbitrate dispute). See, also, *Wilczewski v. Charter West Nat. Bank*, 290 Neb. 721, 861 N.W.2d 700 (2015) (order denying motion to compel arbitration without prejudice was not final, appealable order because order made no final determination--citing lack of evidence--as to whether arbitration clause was enforceable under FAA and, thus, did not affect substantial right).

In the present matter, enforceable or not, the contractual right to arbitrate was set forth in the Binder. AUCRA filed its motion to stay litigation pending arbitration pursuant to the FAA. The district court denied that motion and granted Milan's motion to stop arbitration, each without qualification or limitation. The reason the district court did not reach the substantive issue of arbitrability of the Binder is because it concluded that preclusion doctrines barred arbitration under the Binder in the first instance. There is nothing to suggest the district court would later reanalyze the issue of arbitrability under the Binder on different grounds; in fact, at the hearing on AUCRA's motion to alter or amend, the district court set the parties' underlying dispute for trial relatively soon thereafter.

The order denying AUCRA's motion to stay pending arbitration was made pursuant to a special proceeding. It affected AUCRA's substantial rights: the contractual right under the Binder to benefits of arbitration, which was available before the district court's order. Therefore, the district court's order is a final, appealable order. See *Cullinane v. Beverly Enters. - Neb., supra*.

### 2. ARBITRATION CLAUSE IN BINDER

As previously noted, once an AAA arbitration panel concluded the RPA's arbitration provision was not enforceable, AUCRA then submitted the underlying dispute to arbitration before

"JAMS" (an alternative dispute resolution provider) pursuant to the Binder's arbitration clause. The district court concluded AUCRA could not seek a second attempt at arbitration based on principles of issue and claim preclusion. AUCRA disputes the applicability of issue or claim preclusion, arguing distinctions between the arbitration provisions of the RPA and the Binder.

According to Milan, AUCRA "is attempting to take another bite at the apple by relying upon a different arbitration provision in an agreement to which no party has brought a claim." Brief for appellee at 13. In other words, the Binder is not at issue in the underlying claim. We likewise question the Binder's relevance, and thus the application of its arbitration provision to the underlying dispute when neither AUCRA's complaint nor Milan's counterclaim allege any breach of the Binder. The Binder is one page, and is signed only by Milan. It indicates that Milan is requesting that Applied Underwriters (and affiliates/subsidiaries) cause to be issued to Milan one or more workers' compensation insurance policies contingent upon Milan executing the RPA and a finance agreement. At the hearing before the district court in November 2017, AUCRA labeled the RPA as the parties' "main agreement," and stated that the parties entered the Binder as part of their overall business relationship. Milan argued that each party's claims related "directly" to the RPA, not the Binder, which it called a temporary agreement "that said we will place you into this insurance arrangement" (before entering into the RPA). Milan said AUCRA was "trying to invoke an arbitration clause in [the Binder]" even though it was "not fighting about the [Binder]." Notably, at the subsequent hearing, AUCRA stated that the "RPA is the only contract between the parties and it is a contract out of which the dispute arises." Nevertheless, AUCRA contends the arbitration clause in the Binder should somehow control the parties' dispute, which arises only out of the RPA.

Even setting aside the questionable relevancy of the Binder to the underlying dispute, we find no distinction of any significance between the validity and enforceability of the Binder's arbitration clause versus the RPA's arbitration clause. The district court concluded the issue of whether an arbitration clause relating to an insurance policy is enforceable under Nebraska law had already been decided by an arbitration panel. The court noted that the AAA arbitration panel found that under § 25-2602.01(f)(4), arbitration clauses in contracts concerning or relating to insurance policies are unenforceable, and that § 25-2602.01(f)(4) is not preempted by the FAA. The district court therefore found that the issue of enforceability of the Binder's arbitration clause was precluded from further consideration based on the application of issue and claim preclusion. We agree, as we discuss next.

### 3. ISSUE PRECLUSION

Issue preclusion means that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties or their privies in any future lawsuit. *State v. Spang*, 302 Neb. 285, 923 N.W.2d 59 (2019). Issue preclusion applies where (1) an identical issue was decided in a prior action, (2) the prior action resulted in a final judgment on the merits, (3) the party against whom the doctrine is to be applied was a party or was in privity with a party to the prior action, and (4) there was an opportunity to fully and fairly litigate the issue in the prior action. *Jordan v. LSF8 Master Participation Trust*, 300 Neb. 523, 915 N.W.2d 399 (2018).

AUCRA contends the district court erred in applying issue preclusion as a bar to AUCRA invoking arbitration under the Binder because "at a minimum, the first [(identical issue)] and fourth [(opportunity to fully and fairly litigate the issue)] elements are absent." Brief for appellant at 15. Since AUCRA provides argument only as to those two elements, our analysis will be similarly limited.

(a) Identical Issue

In determining whether issues in a prior and subsequent action are identical, the former verdict and judgment are conclusive only as to the facts directly in issue and do not extend to facts which may be in controversy but which rest on evidence and are merely collateral. *Jordan v. LSF8 Master Participation Trust, supra.*

AUCRA contends an identical issue was not decided previously because no arbitrator or court has evaluated whether AUCRA can enforce the arbitration agreement in the Binder. It claims that the district court "ignored the multiple substantive factual and legal differences between the [Binder] and the RPA." Brief for appellant at 16. AUCRA asserts the following distinctions between the two documents: the RPA contained a choice-of-law clause providing that Nebraska substantive law governed the RPA, while the Binder contained no choice-of-law clause; the AAA arbitration panel never considered the substantive law applicable to the Binder because the Binder was not before that panel, and the panel did not determine whether its broad legal conclusion concerning Nebraska law applied to the Binder, over which AUCRA argues Tennessee law applies; no court or arbitrator has determined whether the arbitration clause in the Binder is enforceable under Tennessee law. Based on these distinctions, AUCRA contends the issue before the district court in the present case was not identical to issues previously decided by the arbitration panel or a Tennessee court.

In considering whether an identical issue had been decided in a prior action or proceeding, the district court pointed out that the arbitration panel found that under § 25-2602.01(f)(4), arbitration clauses in contracts concerning or relating to insurance policies are unenforceable, that the statute is not preempted by the FAA, and the arbitration clause in the Binder relates to an insurance policy. The district court also specifically considered AUCRA's argument that there was no choice-of-law provision in the Binder like there is in the RPA, stating:

> [AUCRA] maintains that there is no choice of law provision in the [Binder], like the one contained in the RPA, that Tennessee arbitration laws, not those of Nebraska, should be applied to the [Binder]. However, the arbitration clause in the [Binder] falls under Nebraska's Uniform Arbitration Act, as the clause states that the [Binder] is subject to both the FAA and Nebraska's arbitration laws. Whether an arbitration agreement, concerning or relating to an insurance policy is enforceable under both the FAA and Nebraska's arbitration laws has previously been determined by the arbitration panel.

> The prior decision of the arbitration panel was final and on the merits. Nebraska's Uniform Arbitration Act supports the determination that an arbitrator's award is final. Although a court may modify or vacate the award made by an arbitrator, the ability to do so is greatly restricted by the Uniform Arbitration Act.

- 8 -

We agree with the district court's determination that the AAA arbitration panel already decided whether an arbitration agreement concerning or relating to an insurance policy is enforceable under both the FAA and Nebraska's arbitration laws. We also agree with the district court that the Binder is a contract concerning an insurance policy and that Nebraska's arbitration laws govern the Binder. Further, there is no question that the only dispute between the parties arises out of the RPA, not the Binder, and the arbitration panel has already addressed the issue of whether the parties have an enforceable agreement to arbitrate disputes arising under the RPA. In reaching its decision, the arbitration panel concluded that arbitration clauses in contracts concerning or relating to insurance policies are unenforceable under § 25-2602.01(f)(4); thus, as argued by Milan, "[I]f the Binder is a contract concerning insurance and is governed by Nebraska law[,] it is unenforceable pursuant to the Arbitration Panel's ruling." Brief for appellee at 22. We agree with the district court that the issues AUCRA attempts to raise related to the Binder have already been addressed by the arbitration panel. This element of issue preclusion is satisfied.

(b) Opportunity to Fully and Fairly Litigate Issue in Prior Action

AUCRA contends that because only the RPA's arbitration clause and not the Binder's arbitration clause had been previously considered, it was not given an opportunity to litigate the enforceability of the Binder's clause. We disagree. As stated by the district court, AUCRA "was a party to the previous litigation, which was done in accordance with the current cause of action and the arbitration panel gave [AUCRA] a full and fair opportunity to litigate these issues." This element of issue preclusion is also satisfied.

(c) Application of Issue Preclusion Not Inequitable

AUCRA suggests that the differences in the AAA and JAMS rules make the application of issue preclusion inequitable. It contends the original arbitration panel evaluated the RPA under the AAA rules, while the Binder would be evaluated by a JAMS arbitration panel under the JAMS rules. AUCRA claims that because the arbitration rules differ, "the prior AAA arbitration does not estop AUCRA from pursuing JAMS arbitration under the [Binder]." Brief for appellant at 18.

Milan suggests this argument "is another red herring." Brief for appellee at 25. Milan acknowledges that the arbitration provisions in the RPA and Binder require different arbitration rules, but that AUCRA "failed to show how the proceedings in AAA and JAMS would differ <u>for the issue of determining the enforceability of an arbitration provision</u>." *Id*. at 27 (emphasis in original). We agree. The issue does not turn on possible differences in arbitration rules; rather, the issue is whether a final determination has already been made with regard to the enforceability of the arbitration clause in the Binder. As already discussed, we agree with the district court that issue preclusion barred AUCRA from a second attempt at arbitration via the Binder.

4. Claim Preclusion

Under Nebraska law, claim preclusion bars relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if (1) the former judgment was rendered by a court of competent jurisdiction, (2) the former judgment was a final judgment, (3) the former judgment was on the merits, and (4) the same parties or their privies were involved in both actions.

*Hill v. AMMC, Inc.*, 300 Neb. 412, 915 N.W.2d 29 (2018). Claim preclusion bars relitigation not only of those matters actually litigated, but also those matters which might have been litigated in the prior action. *Fetherkile v. Fetherkile*, 299 Neb. 76, 907 N.W.2d 275 (2018). The doctrine rests on the necessity to terminate litigation and on the belief that a person should not be vexed twice for the same cause. *Id*.

The district court determined that an arbitrator had already made a determination that Nebraska law prohibits the enforcement of arbitration clauses such as the one contained in the RPA. Further, the court stated, "The same factual matter is considered in determining the enforceability of the arbitration clause in the RPA as is required for the [Binder], since both requests by [AUCRA] to arbitrate arise out of the same alleged breach of the RPA and both are arbitration clauses purporting to compel arbitration of an insurance policy." Since "the final decision of an arbitrator is final and on the merits for the purpose of preclusion," and the "current parties were the same parties involved in the previous arbitration," the district court determined that all requirements of claim preclusion were met. The court stated, "[AUCRA] cannot vex Milan twice by compelling a second arbitration since the claim under the [Binder] was necessarily included, or could have been brought in the prior arbitration proceeding."

As encompassed in similar arguments related to issue preclusion, AUCRA argues that enforceability of the Binder's arbitration agreement was not necessarily included in the AAA arbitration panel's decision because that "panel would have exceeded its jurisdiction if it had adjudicated the enforceability of the arbitration agreement in the [Binder]." Brief for appellant at 20. AUCRA claims the prior arbitration involved only the RPA, which was governed by AAA rules, whereas the Binder's arbitration agreement provides for arbitration under JAMS rules. AUCRA claims it "did not ask and could not have asked the panel of AAA arbitrators to determine the validity of the arbitration agreement in the [Binder] . . . as that panel did not have subject matter jurisdiction over the [Binder]." *Id*. at 21. However, as noted by Milan, AUCRA has failed to present any case law or "any rule under the AAA that would limit the jurisdiction of the Arbitration Panel from deciding whether there was a valid and enforceable arbitration provision to arbitrate disputes under the RPA." Brief for appellee at 32. Rather, in support of its argument, AUCRA directs us to *Hicks v. O'Meara*, 31 F.3d 744 (8th Cir. 1994).

In *Hicks v. O'Meara, supra*, the husband and wife plaintiffs brought a wrongful employment termination claim in a South Dakota small claims court against a former employer for terminating a one-year employment contract after 5 months. After a favorable verdict for the employer, the plaintiffs then filed an action in federal district court claiming the employer failed to pay the required minimum wage and time and one-half for overtime work in violation of the Fair Labor Standards Act and state law. The plaintiffs did not challenge the dismissal, nor did they seek damages, related to their claim of wrongful termination. The relief requested in the second action was limited to compensation they claimed was owed to them for time actually worked. The federal district court granted summary judgment in favor of the employer on the grounds of res judicata (claim preclusion). The Eighth Circuit reversed, noting that the two claims were "supported by different underlying facts," and they involved "different wrongs and different evidence." *Id*. at 746. The Eighth Circuit added that "even when there is an identity of claims res judicata will not preclude the second suit if a claim could not have been fully and fairly adjudicated

in the prior case." *Id*. Noting that the small claims court only had jurisdiction to hear claims up to $2,000, and given the allegations that the amount at issue was in excess of $13,000, the Eighth Circuit concluded that the amount in controversy was "far beyond the jurisdiction of the small claims court," and "[f]or this additional reason, res judicata cannot bar this federal suit." *Id*.

As argued by Milan, *Hicks* is distinguishable. Unlike the starkly different claims filed in *Hicks*, AUCRA is attempting to bring a cause of action for breach of the RPA in the present action, which is the same claim it previously raised. Both the RPA and the Binder concern or relate to an insurance policy, and an arbitration panel has already determined that arbitration clauses in such instances are not enforceable under both the FAA and Nebraska's arbitration laws. AUCRA's argument that it could not have raised any arguments related to the Binder because the AAA lacked jurisdiction to consider such arguments is not supported by any persuasive legal authority. We agree with the district court's conclusion that AUCRA's second attempt to arbitrate its claim against Milan was barred by claim preclusion.

### 5. OTHER GROUNDS FOR AFFIRMANCE

Milan argues that the district court properly determined that issue and claim preclusion barred AUCRA's attempt at a second arbitration, but even if the district court erred in relying on those grounds to reach its decision, this court can nevertheless affirm based on *Citizens of Humanity v. Applied Underwriters*, 299 Neb. 545, 909 N.W.2d 614 (2018) (unless another applicable federal insurance law directly preempts § 25-2602.01(f)(4), agreements to arbitrate future controversies in insurance policies are invalid under Nebraska law). However, we need not reach this argument since we have already concluded the district court correctly denied AUCRA's motion to stay based on principles of issue and claim preclusion.

### VII. CONCLUSION

We affirm the order of the district court denying AUCRA's motion to stay pending arbitration and granting Milan's motion to stop arbitration.

AFFIRMED.