**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 16-1511

MINNIELAND PRIVATE DAY SCHOOL, INC., a Virginia corporation,

Plaintiff - Appellee,

v.

APPLIED UNDERWRITERS CAPTIVE RISK ASSURANCE COMPANY, INC.,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony J. Trenga, District Judge. (1:15−cv−01695–AJT-IDD)

Argued: May 10, 2017                    Decided: August 11, 2017

Before GREGORY, Chief Judge, and SHEDD and WYNN, Circuit Judges.

Affirmed in part, reversed in part, and remanded by published opinion. Judge Wynn wrote the opinion, in which Chief Judge Gregory and Judge Shedd joined.

**ARGUED:** Daniel William Olivas, LEWIS, THOMASON, KING, KRIEG & WALDROP, Nashville, Tennessee, for Appellant. James Scott Krein, KREIN LAW FIRM, Prince William, Virginia, for Appellee. **ON BRIEF:** R. Dale Bay, Emily H. Mack, LEWIS, THOMASON, KING, KRIEG & WALDROP, Nashville, Tennessee, for Appellant.

WYNN, Circuit Judge:

Defendant Applied Underwriters Captive Risk Assurance Company, Inc. ("Applied Underwriters"), a subsidiary of Berkshire Hathaway, Inc., appeals an order of the U.S. District Court for the Eastern District of Virginia (1) denying Applied Underwriters' motion to compel arbitration and (2) holding that Applied Underwriters was judicially estopped from arguing that an agreement between Applied Underwriters and Plaintiff Minnieland Private Day School, Inc. ("Minnieland") did not constitute an insurance contract for purposes of Virginia law. For the reasons that follow, we conclude that the district court correctly denied Applied Underwriters' motion to compel arbitration. But the district court reversibly erred in applying the doctrine of judicial estoppel to hold that the agreement constituted an insurance contract. Accordingly, we affirm in part, reverse in part, and remand the case to the district court for further proceedings consistent with this opinion.

I.

A.

Minnieland, a provider of child daycare, is required under Virginia law to provide workers' compensation insurance to its employees. In 2013, Minnieland entered into a "Reinsurance Participation Agreement" ("RPA") with Applied Underwriters, as part of Minnieland's purchase of Applied Underwriters' "Equity Comp" program, which Applied Underwriters held out to be a "Worker's Compensation Program." J.A. 9. Under the RPA, which had a three-year term, one or more "Issuing Insurers"—all of which were affiliates of Applied Underwriters and subsidiaries of Berkshire Hathaway—

2

would issue workers' compensation insurance policies to Minnieland. Also pursuant to the RPA, Applied Underwriters would establish a "segregated protected cell" through which Minnieland would share in the Issuing Insurers' profits and losses attributable to Minnieland's policies. Following execution of the RPA, Applied Underwriters' affiliate, and Berkshire Hathaway subsidiary, Continental Indemnity Company ("Continental") issued a workers' compensation policy to Minnieland. The RPA appointed another Berkshire Hathaway subsidiary as the billing agent for Applied Underwriters and the Issuing Insurers. Throughout the term of the agreement, Minnieland paid premiums on the policy to Applied Underwriters.

The RPA included an arbitration provision mandating resolution of "any disputes arising under this Agreement" through binding arbitration in the British Virgin Islands and under the provisions of the American Arbitration Association. J.A. 29–30. In particular, the arbitration agreement provided that "[a]ll disputes between the parties relating in any way to (1) the execution and delivery, construction or enforceability of this Agreement, (2) the management or operations of the Company, or (3) any other breach or claimed breach of this Agreement" were subject to mandatory binding arbitration. J.A. 30.

For the first 33 months of the 36-month term, Minnieland's monthly premiums averaged $58,810. But on November 9, 2015, Applied Underwriters billed Minnieland $471,213, a 1,167% increase from the October 2015 premium and an 801% increase from the average premium Minnieland had paid over the first 33 months of the policy. Though Applied Underwriters refused to disclose the basis for the premium increase, Minnieland

3

nevertheless paid the November premium. After Minnieland failed to pay a second similarly large billed premium in December 2015, Applied Underwriters terminated the EquityComp program—and the Continental workers' compensation policy, in particular—and informed Minnieland that it had a significant outstanding balance on the policy.

B.

On December 24, 2015, Minnieland filed suit against Applied Underwriters in federal district court, alleging that Applied Underwriters engaged in the business of insurance in Virginia without complying with Virginia insurance and workers' compensation laws. In particular, Minnieland alleged that the RPA amounted to an "insurance contract," not a "reinsurance" agreement, and therefore constituted an unlawful "attempt to circumvent" various Virginia laws related to insurance and workers' compensation. J.A. 12–13. The complaint also alleged that the arbitration provisions in the RPA violated Virginia insurance law. Minnieland sought a declaration (1) that the RPA constituted an insurance contract and was void due to Applied Underwriters' failure to comply with Virginia law; (2) as to what amount, if any, Minnieland owed Applied Underwriters under the RPA; and (3) that the premiums, deposits, and charges assessed by Applied Underwriters were excessive. Minnieland also sought damages for fraud and breach of contract.

On January 21, 2016, Applied Underwriters moved to compel arbitration. In response, Minnieland argued that under Virginia law "no provision of any insurance contract can . . . deprive 'the courts of this Commonwealth of jurisdiction in actions

4

against the insurer,'" rendering any arbitration provision in the RPA "'void.'" J.A. 85, 88 (quoting Va. Code Ann. § 38.2–312). Applied Underwriters replied that, because the RPA delegated questions of arbitrability to the arbitrator, the arbitrator had exclusive authority to decide whether the RPA constituted an "insurance contract" subject to Section 38.2–312's prohibition on mandatory arbitration of disputes involving such contracts. The district court initially granted Applied Underwriters' motion, holding that "the arbitration provision in the [RPA] requires that an arbitrator decide whether the parties' contract is subject to Va. Code § 38.2–312." *Minnieland Private Day School, Inc. v. Applied Underwriters Captive Risk Assurance Co.*, No. 1:15–cv–1695, 2016 WL 7199729, at *1 (E.D. Va. Mar. 17, 2016). The district court's initial order included the following note:

> In order to avoid unnecessary and unwarranted delay and expense, the Court urges Applied to consider whether, given the underlying merits of the issue to be arbitrated, the rulings already obtained in arbitration concerning whether the RPA is a "contract of reinsurance" (as advocated for by Applied), and the positions Applied has taken in other proceedings concerning whether the RPA is a "contract of reinsurance," Applied can continue to advocate in good faith before an arbitrator and without running afoul of 28 U.S.C. § 1927 that the RPA is a "contract of reinsurance" and therefore not a "contract of insurance" subject to Va. Code § 38.2–312.

*Id.* at *3 n.6

Minnieland moved for reconsideration, again arguing that Section 38.2–312 rendered void "any" arbitration provision in the RPA and, therefore, that "[t]he court must resolve the validity of the arbitration provision." J.A. 208-09. Minnieland also attached to its motion additional materials from other regulatory and legal proceedings in which Applied Underwriters or its affiliates had either refused to dispute or conceded that

5

the RPA constituted an insurance contract for purposes of various other state laws. The district court orally granted Minnieland's motion, concluding that Applied Underwriters was judicially estopped from arguing that the RPA did not constitute a "contract of insurance." J.A. 465. As a result, the court observed that there was no "arbitrable issue to be submitted to the arbitrator under the RPA." J.A. 465. The district court further concluded that "Applied's assertion in this action that the RPA is not a contract of insurance but rather a contract of reinsurance must be viewed as an attempt to gain an unfair advantage in this proceeding by delaying what ultimately must be addressed by the Court and diverting this case procedurally to an arbitrable forum that is to play no role under the applicable Virginia law in deciding the merits of plaintiff's claims." J.A. 466.

Applied Underwriters timely appealed, arguing that the district court (1) reversibly erred in denying Applied Underwriters' motion to compel arbitration and (2) incorrectly held that the doctrine of judicial estoppel barred Applied Underwriters from asserting that the RPA does not constitute a "contract of insurance" for purposes of Virginia law. We hold that the district court correctly denied Applied Underwriters' motion to compel arbitration, but incorrectly applied the doctrine of judicial estoppel in holding that the RPA constitutes an "insurance contract" for purposes of Section 38.2–312.

## II.

This Court reviews de novo a district court's order denying a motion to compel arbitration under the Federal Arbitration Act. *See Noohi v. Toll Bros.*, 708 F.3d 599, 605 (4th Cir. 2013). That statute provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy

6

thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Federal Arbitration Act generally preempts state laws limiting the enforceability of arbitration agreements. *See, e.g.*, *Preston v. Ferrer*, 552 U.S. 346, 352–53 (2008).

However, the federal McCarran-Ferguson Act endows states with plenary authority over the regulation of insurance and provides that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance." 15 U.S.C. § 1012. "Thus, McCarran-Ferguson authorizes 'reverse preemption' of generally applicable federal statutes by state laws enacted for the purpose of regulating the business of insurance." *ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 380 (4th Cir. 2012). In other words, state laws invalidating arbitration agreements in insurance policies "reverse preempt[]" the Federal Arbitration Act. *E.g.*, *Am. Bankers Ins. Co. of Fla. v. Inman*, 436 F.3d 490, 494 (5th Cir. 2006) (holding that Mississippi statute prohibiting required arbitration of disputes stemming from uninsured and underinsured motorist coverage provisions of personal automobile insurance policies reverse preempts Federal Arbitration Act); *Am. Health & Life Ins. Co. v. Heyward*, 272 F. Supp. 2d 578, 582 (D.S.C. 2003) (holding that South Carolina law prohibiting mandatory arbitration provisions in insurance contracts reverse preempts the Federal Arbitration Act).

Virginia law, which the parties agree governs the present dispute, provides that "[n]o insurance contract delivered or issued for delivery in this Commonwealth and

covering subjects which are located or residing in this Commonwealth . . . shall contain any condition, stipulation or agreement . . . [d]epriving the courts of this Commonwealth of jurisdiction in actions against the insurer," and that "[a]ny such condition, stipulation or agreement shall be void." Va. Code Ann. § 38.2–312. The district court concluded—and we agree—that Section 38.2–312 renders void mandatory arbitration provisions in "insurance contracts" governed by Virginia law. *Minnieland*, 2016 WL 7199729, at *1, *3.

On appeal, Applied Underwriters does not contend that Section 38.2–312 does not generally reverse preempt the Federal Arbitration Act. Rather, Applied Underwriters argues that the district court improperly determined that Section 38.2–312 reverse preempts the arbitration provisions in the RPA because the RPA included a so-called "delegation provision," which expressly delegated the authority to resolve questions of arbitrability to the arbitrator. In particular, Applied Underwriters asserts that the district court improperly concluded that the RPA constituted an "insurance contract" for purposes of Section 38.2–312, when the RPA left that question of arbitrability to the arbitrator.

Applied Underwriters arbitrability argument principally rests on the Supreme Court's opinion in *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010). There, the arbitration agreement between the defendant, Rent-A-Center, and the plaintiff, Jackson, provided that "[t]he Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement." 561 U.S. at 66 (alteration in original)

8

(internal quotation marks omitted). Jackson sought to avoid the *arbitration agreement* on grounds of unconscionability, arguing that the mandatory arbitration provision was one-sided and involved unfair procedures limiting discovery and requiring fee-splitting. *Id.* at 73–74. Below, the Ninth Circuit concluded that the agreement unambiguously gave the arbitrator exclusive authority to resolve questions of arbitrability. *Jackson v. Rent-A-Center West, Inc.*, 581 F.3d 912, 917 (9th Cir. 2009), *rev'd*, 561 U.S. 63 (2010). Nonetheless, the Ninth Circuit held that when "a party challenges an arbitration agreement as unconscionable, and thus asserts that he could not meaningfully assent to the agreement, the threshold question of unconscionability is for the court." *Id.*

The Supreme Court reversed, holding that the Ninth Circuit's analysis improperly focused on the unconscionability of the *arbitration agreement* and not the *delegation provision*, which provided the arbitrator exclusive authority to resolve questions of arbitrability. *See Rent-A-Center*, 561 U.S. at 72–74. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other," the Court explained. *Id.* at 70. Because Jackson's unconscionability arguments focused on "the *entire arbitration agreement*"— and not the delegation provision, in particular—the unchallenged delegation provision granted the arbitrator exclusive authority to determine whether the arbitration agreement was unconscionable. *Id.* at 72–74.

*Rent-A-Center* makes clear, however, that "[i]f a party challenges the validity under § 2 of the precise agreement to arbitrate at issue, the federal court must consider the challenge before ordering compliance with that agreement under § 4." *Id.* at 71. Accordingly, because delegation provisions constitute "an additional, antecedent agreement" to arbitrate, such provisions are "valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* at 69–70 (quoting 9 U.S.C. § 2). Federal courts, therefore, "must consider" challenges to delegation provisions "before ordering compliance with [such provisions]." *Id.* at 71. To that end, *Rent-A-Center* provides an illustration of how Jackson could have argued that the *delegation provision*, as opposed to the arbitration agreement as a whole, was "unconscionable"—and therefore unenforceable—because of the limitations on arbitral discovery and the fee-splitting procedures:

> To make such a claim based on the discovery procedures, Jackson would have had to argue that the limitation upon the number of depositions causes the arbitration of his claim that the [arbitration] Agreement is unenforceable to be unconscionable. That would be, of course, a much more difficult argument to sustain than the argument that the same limitation renders arbitration of his factbound employment-discrimination claim unconscionable. Likewise, the unfairness of the fee-splitting arrangement may be more difficult to establish for the arbitration of enforceability than for arbitration of more complex and fact-related aspects of the alleged employment discrimination.

*Id.* at 74.

Accordingly, under *Rent-A-Center*, we first must decide whether Minnieland lodged a challenge against the delegation provision in the RPA, in particular. Second, if we conclude that Minnieland specifically challenged the enforceability of the delegation

10

provision, we then must decide whether the delegation provision is unenforceable "upon such grounds as exist at law or in equity." 9 U.S.C. § 2.

Regarding the first question, Applied Underwriters argues that Minnieland, like the plaintiff in *Rent-A-Center*, failed to specifically challenge the delegation provision in the RPA. But before the district court, Minnieland argued that Section 38.2-312 rendered void "*any*" arbitration provision in the RPA, J.A. 208-09 (emphasis added), necessarily including the delegation provision, which is simply "an additional, antecedent agreement" to arbitrate, *Rent-A-Center*, 561 U.S. at 70; *see also* J.A. at 85, 88 (arguing that under Virginia law "*no provision* of any insurance contract can . . . deprive 'the courts of this Commonwealth of jurisdiction in actions against the insurer,'" rendering any arbitration provision in the RPA "'void'" (quoting Va. Code Ann. § 38.2–312) (emphasis added)). And to avoid any doubt that its challenge to the enforceability of the arbitration agreements in the RPA extended to the delegation provision, Minnieland expressly asserted that, under Section 38.2–312, "*[t]he court must resolve* the validity of the arbitration provision," an argument relevant only to the enforceability of the delegation provision. J.A. 208-09 (emphasis added). Accordingly, Minnieland "challenged the validity of that delegation with sufficient force and specificity" to satisfy *Rent-A-Center*. *Hayes v. Delbert Servs. Corp.*, 811 F.3d 666, 671 n.1 (4th Cir. 2016).

Applied Underwriters nevertheless argues that Minnieland failed to adequately contest the enforceability of the delegation provision because its *complaint* did not "specifically challenge" the delegation provision. Appellant's Br. at 5; Appellant's Reply Br. at 7–8. But a defendant who seeks to compel arbitration under the Federal

11

Arbitration Act bears the burden of establishing the existence of a binding contract to arbitrate the dispute. *See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500–01 (4th Cir. 2002). And until a defendant moves to compel arbitration, there is no reason for a plaintiff to assert any grounds for disregarding an arbitration agreement. Accordingly, the absence of allegations in Minnieland's complaint challenging the enforceability of the delegation provision has no bearing on whether the district court properly denied Applied Underwriters' motion to compel arbitration.

Having concluded that Minnieland challenged the enforceability of the delegation provision, we now determine whether the delegation provision is unenforceable "upon such grounds as exist at law or in equity." 9 U.S.C. § 2. For several reasons, we conclude that Section 38.2–312 renders invalid delegation provisions in putative insurance contracts governed by Virginia law, at least to the extent such delegation provisions endow an arbitrator, as opposed to a court, with exclusive authority to determine whether the contract at issue constitutes an "insurance contract" for purposes of Virginia law.[1]

---

[1] In reaching this conclusion, we express no opinion as to whether Section 38.2–312 renders invalid a putative insurance contract's delegation of other gateway issues to arbitrators. Likewise, we express no opinion as to whether questions, gateway or otherwise, of *judicial* estoppel—a doctrine applied "to protect the integrity of the judicial process" and "to prevent improper use of judicial machinery"—are ever delegable to arbitrators. *New Hampshire v. Maine*, 532 U.S. 742, 749–50 (2001) (internal quotation marks omitted); *Allen v. Zurich Ins. Co.*, 667 F.2d 1162, 1166 (4th Cir. 1982) (holding that judicial estoppel "protect[s] the essential integrity of the judicial process").

To begin, we find it significant that Virginia chose to treat arbitration provisions in insurance contracts as "void." Va. Code § 38.2–312. Under Virginia law, when a provision in an insurance contract is "void," it is "unenforceable from its inception." *Liverpool & London & Globe Ins. Co. v. Bolling*, 10 S.E.2d 518, 522 (Va. 1940); *see also* Joseph M. Perrillo, Calamari and Perrillo on Contracts § 1.8(b) (6th ed. 2009) ("A contract is void, a contradiction in terms, when it produces no legal obligation. . . . It would be more exact to say that no contract was created."). If an agreement including a delegation provision constitutes an "insurance contract," the delegation provision—an "additional, antecedent agreement" to arbitrate, *Rent-A-Center*, 561 U.S. at 70—is "unenforceable from its inception." Thus, Virginia's decision to treat delegation provisions in insurance contracts as void constitutes "grounds as exist at law . . . for the revocation of any contract." 9 U.S.C. § 2.

We also reach this conclusion because Section 38.2–312 reflects a state policy choice that insureds should have the option to seek enforcement of Virginia's insurance laws and regulations in court, rather than through arbitration. Enforcing contractual provisions that provide arbitrators with exclusive authority to determine whether a contract amounts to a "contract of insurance"—a term defined by Virginia law—would undermine that purpose by giving the arbitrators exclusive authority over a core question of Virginia insurance law. Indeed, were an arbitrator to incorrectly determine that a contract was not an "insurance contract" for purposes of Virginia law and move forward with arbitration of the underlying dispute—or to correctly conclude that a contract was an insurance contract and then incorrectly move forward with arbitration of the underlying

13

dispute—a Virginia insured would be deprived of recourse to the judiciary to resolve a dispute over the interpretation of an insurance contract governed by Virginia law, the precise outcome Virginia sought to prevent in enacting Section 38.2–312.

Applied Underwriters argues that this conclusion places this Court in conflict with the Third and Sixth Circuits, which have held that questions of arbitrability of RPAs between Applied Underwriters and other Equity Comp customers—and governed by different state laws—were for the arbitrator to resolve. *See S. Jersey Sanitation Co. v. Applied Underwriters Captive Risk Assurance Co.*, 840 F.3d 138, 146 (3d Cir. 2016); *Milan Express Co. v. Applied Underwriters Captive Risk Assurance Co.*, 590 Fed. App'x 482, 486 (6th Cir. 2014). We disagree. Neither *South Jersey Sanitation* nor *Milan Express* considered—much less decided—whether the relevant state insurance laws rendered unenforceable the *delegation provision* in the RPA—the question we resolve here. Accordingly, *South Jersey Sanitation* and *Milan Express* are inapposite to whether Section 38.2–312 renders void delegation provisions in putative insurance contracts governed by Virginia law.

In sum, because Section 38.2–312 renders void delegation provisions in putative insurance contracts—at least to the extent such provisions authorize an arbitrator to resolve whether the contract at issue constitutes an "insurance contract"—we conclude that the district court did not reversibly err in denying Applied Underwriters' motion to compel arbitration.

B.

14

Having concluded that the court, not an arbitrator, should determine whether the RPA constitutes an insurance contract for purposes of Virginia law, we now must decide whether the district court properly applied the doctrine of judicial estoppel to preclude Applied Underwriters from taking the position that the RPA is not an insurance contract. This Court reviews for abuse of discretion a district court's application of the equitable doctrine of judicial estoppel. *See King v. Herbert J. Thomas Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998) ("As an equitable doctrine, judicial estoppel is invoked in the discretion of the district court . . . .").

"Judicial estoppel precludes a party from adopting a position that is inconsistent with a stance taken in prior litigation." *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 28 (4th Cir. 1995). "The purpose of the doctrine is to prevent a party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process." *Id.* at 29 (internal quotation marks omitted). "Even so, courts must apply the doctrine with caution." *Id.*

To that end, this Court has identified four elements that must be met before a court may apply judicial estoppel: (1) "the party sought to be estopped must be seeking to adopt a position that is inconsistent with a stance taken in prior litigation;" (2) "the position sought to be estopped must be one of fact rather than law or legal theory;" (3) "the prior inconsistent position must have been accepted by the court;" and (4) "the party sought to be estopped must have intentionally misled the court to gain unfair advantage." *Lowery v. Stovall*, 92 F.3d 219, 223–24 (4th Cir. 1996) (internal quotation marks omitted). We have characterized the final element as "determinative." *Id.* at 224

15

(internal quotation marks omitted). Applying this test, we conclude that the district court committed legal error in applying judicial estoppel and, therefore, abused its discretion. *See League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 235 (4th Cir. 2014) ("A district court abuses its discretion when it misapprehends or misapplies the applicable law.").

With respect the first element, the district court concluded that Applied Underwriters' position that "the RPA is a contract of reinsurance and not a contract of insurance" was "inconsistent with those [positions] asserted in other legal proceedings." J.A. 465. But none of the other proceedings in which Applied Underwriters allegedly took an inconsistent position involved whether the RPA constituted an "insurance contract" for purposes of *Virginia* law—the question at issue here. Therefore, Applied Underwriters' assertion that the RPA is not an insurance contract for purposes of Virginia law is not inconsistent with its legal position in any of those cases. Additionally, in several cases, Applied Underwriters has argued expressly that the RPA did not constitute an insurance contract for purposes of the relevant state law. *See S. Jersey Sanitation*, 840 F.3d at 141 (stating that Applied Underwriters argued that, under Nebraska law, the RPA "was not a workers' compensation insurance policy, but rather an investment instrument[,] . . . a contract relating [to] or concerning a reinsurance policy" (internal quotation marks omitted)); *Milan Express Co. v. Applied Underwriters Captive Risk Assurance Co.*, 993 F. Supp. 2d 846, 856 (W.D. Tenn.) (noting that, "[a]ccording to [Applied Underwriters], . . . the RPA does not concern or relate to a policy of insurance and therefore is outside the scope of" the Nebraska state statute prohibiting mandatory

16

arbitration provisions in insurance contracts (internal quotation marks omitted)), *vacated and remanded on other grounds*, 590 Fed. App'x 482 (2014). Accordingly, Applied Underwriters' position in this case is entirely consistent with the position it has taken in several other cases.

The second element—that judicial estoppel may only be applied when the position sought to be estopped is one of fact rather than law—also is not met in this case. Here, Applied Underwriters' position is that the RPA does not constitute an insurance contract for purposes of Virginia law. Under Virginia law, the interpretation of a contract—and an insurance contract, in particular—presents a question of law. *See PBM Nutritionals, LLC v. Lexington Ins. Co.*, 724 S.E.2d 707, 712–13 (Va. 2012). Likewise, the meaning of "insurance contract" in Section 38.2–312 poses a question of law. *See Conyers v. Martial Arts World of Richmond, Inc.*, 639 S.E.2d 174, 178 (Va. 2007) ("[A]n issue of statutory interpretation is a pure question of law . . . ."). Accordingly, the position at issue is one of law, rather than fact.

Regarding the third and fourth elements—judicial reliance and intent to mislead to gain an unfair advantage—each of those elements necessarily contemplate that the position at issue is inconsistent with a position taken by the party in earlier litigation. Because Applied Underwriters' assertion that the RPA does not constitute an "insurance contract" for purposes of Section 38.2–312 is not inconsistent with any position taken by Applied Underwriters in previous proceedings, *see supra*, the third and fourth elements also do not support application of judicial estoppel.

III.

In sum, the district court correctly denied Applied Underwriters' motion to compel arbitration, but incorrectly applied the doctrine of judicial estoppel in holding that the RPA constitutes an "insurance contract" for purposes of Section 38.2–312. The parties have not had the opportunity to fully brief and argue whether, if judicial estoppel does not apply, the RPA is an insurance contract under Virginia law. As such, we remand for consideration of that issue in the first instance and further proceedings consistent with this opinion.

*AFFIRMED IN PART,*
*REVERSED IN PART,*
*AND REMANDED*