**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-1965

MODERN PERFECTION, LLC; FRUITFUL BEAR, LLC; GRAVITY VIDEO, INC.; BEAUTE NEST, LLC; PIZZAZZ! LLC; ERIC SNIPES INC., individually and as representatives of a class of similarly situated persons,

Plaintiffs – Appellants,

and

BUZTUBR, INC.,

Plaintiff,

v.

BANK OF AMERICA, N.A.,

Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. Lydia Kay Griggsby, District Judge. (1:22-cv-02103-LKG)

Argued: September 26, 2024                     Decided: January 13, 2025

Before HARRIS, HEYTENS, and BERNER, Circuit Judges.

Affirmed by published opinion. Judge Heytens wrote the opinion, which Judge Harris and Judge Berner joined.

**ARGUED:** Nathan C. Zipperian, MILLER SHAH LLP, Fort Lauderdale, Florida, for Appellants. Jesse Smallwood, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellee. **ON BRIEF:** Kelly L. Tucker, Laina M. Herbert, GRANT & EISENHOFER P.A., Wilmington, Delaware; James C. Shah, Natalie Finkelman Bennett, Philadelphia, Pennsylvania, for Appellants. Craig Singer, Enu Mainigi, WILLIAMS & CONNOLLY LLP, Washington, D.C., for Appellee.

_____

TOBY HEYTENS, Circuit Judge:

Six small businesses each made two contracts with Bank of America. One contract had an arbitration provision; the other did not. When disputes arose, the businesses sued the bank in federal court and the bank moved to compel arbitration. The district court declined to decide whether the disputes fell within the scope of the parties' arbitration agreement because it concluded the contract with the arbitration provision delegated such disputes to the arbitrator. We affirm.

I.

Over a five-year period, the businesses each opened accounts with the bank. In doing so, they entered into deposit agreements that governed the accounts and that the bank periodically updated. Although each business had a different deposit agreement, the parties agree the relevant provisions are identical in each agreement.

The deposit agreements contain a section labeled "Resolving Claims." JA 195. That section first defines "Claim" as "any claim, dispute or controversy . . . by either you or us against the other . . . arising from or relating in any way to this deposit agreement (including any renewals, extensions or modifications) or the deposit relationship between us." *Id.* The deposit agreements also include a bolded subheading labeled "How Claims on Business Accounts will be Resolved" that says either party has "the right to compel" the other "to resolve a Claim relating to a business account by binding arbitration." *Id.* On the next page, there is a bolded subheading labeled "Arbitration." JA 196. The fifth paragraph under that subheading says:

3

> The arbitrator, sitting alone without a jury, will decide questions of law and fact and will resolve the Claim. This includes the applicability of this *Resolving Claims* section and the validity of the deposit agreement, except that the arbitrator may not decide or resolve any Claim challenging the validity of the class action and jury trial waiver. The validity of the class action and jury trial waiver will be decided only by a judicial referee or a court.

*Id.*

During the COVID-19 pandemic's early days, the businesses each executed promissory notes with the bank to receive federal Paycheck Protection Program (PPP) loans. Here too, the parties agree the promissory notes are identical in all relevant respects.

Unlike the deposit agreements, the promissory notes do not contain an arbitration clause. They do, however, contain a paragraph labeled "Choice of Law; Jurisdiction; Venue," which states that the parties "agree and consent to be subject to the personal jurisdiction of any state or federal court located in" the State of the borrower's principal place of business and "that trial shall only be conducted by a court in that state." JA 450. The promissory notes also require each business "to maintain a deposit account" with the bank "until the Loan is either forgiven in full or the Loan is fully paid" and say the bank will deposit "the proceeds of the Loan . . . into the Deposit Account." JA 448.

In 2022, the businesses sued the bank in federal district court, asserting breach of contract, fraud, and other state-law claims based on the bank's marketing and administration of its PPP loan program. The bank moved to compel arbitration and dismiss the complaint. Although the businesses opposed both arbitration and dismissal, they did not ask the district court to stay their lawsuit as an alternative to dismissal if it deemed their disputes arbitrable.

4

The district court granted the bank's motion to compel arbitration and dismissed the complaint. The court concluded "the parties have entered into an arbitration agreement that contains a valid and enforceable delegation clause" and "[t]he plain language of the delegation clause also makes clear that the parties must address threshold issues of arbitrability before the arbitrator." JA 723. We have appellate jurisdiction under 28 U.S.C. § 1291 because the district court dismissed the complaint "without providing leave to amend." *Britt v. DeJoy*, 45 F.4th 790, 796 (4th Cir. 2022) (en banc).

## II.

We first must identify the types of claims the businesses are making and determine which of those claims are properly before us. As the Supreme Court recently explained in *Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024), "parties can . . . have different kinds of disputes" about the merits and what questions they have (or have not) agreed to arbitrate. *Id.* at 148. A "first-order disagreement" is "[a] contest over the merits of the dispute" whose resolution "depends on the applicable law and relevant facts." *Id.* (quotation marks removed). A "second-order dispute" involves "whether [the parties] agreed to arbitrate the merits" of their underlying dispute. *Id.* (quotation marks removed). A "third-order dispute," in turn, involves "who should have the primary power to decide the second matter"—the court or an arbitrator. *Id.* at 149 (quotation marks removed). Finally, a fourth-order disagreement arises when the parties "have multiple agreements that conflict as to the third-order question of who decides arbitrability." *Id. Coinbase* holds that fourth-order disagreements—those about which of "*two* contracts" "governs" whether a given dispute is subject to arbitration—must be decided by a court using traditional contract principles.

5

*Id.* at 152. Applying that framework here, we conclude the businesses have failed to properly raise any fourth-order issues and we agree with the district court that the deposit agreements provide that an arbitrator decides arbitrability questions.

### A.

The Supreme Court had not decided *Coinbase* when the district court granted the motion to compel arbitration or the parties filed their appellate briefs. In post-*Coinbase* letters, the businesses gesture at what *Coinbase* calls a fourth-order dispute, asserting "[t]his Court should undertake the requested analysis to determine whether the Promissory Notes or the Deposit Agreements govern the parties' disputes." ECF 38 at 1–2.

We decline to consider any fourth-order issues because the businesses never raised them in their briefs to this Court. See *United States v. Ashford*, 718 F.3d 377, 381 (4th Cir. 2013) (refusing to consider "new arguments couched as supplemental authorities"). A fourth-order argument would have gone something like this: *Even if* the deposit agreements contain a valid and enforceable arbitration clause that would otherwise cover the current dispute, that does not matter because the promissory notes countermand any such agreement. See *Coinbase*, 602 U.S. at 152 (describing fourth-order disputes as arising when one contract "send[s] arbitrability disputes to arbitration, and the other either explicitly or implicitly send[s] arbitrability disputes to the courts").

That is not an argument the businesses made in their briefs. Instead, the businesses argued they never agreed to arbitrate this dispute at all (a second-order argument) and that the deposit agreements do not clearly and unmistakably instruct that the arbitrator should decide whether a given dispute falls within the arbitration clause (a third-order argument).

6

The businesses' argument was thus that their claims fall outside the deposit agreements' arbitration provision—not that the deposit agreements have been "superseded" by the promissory notes. *Coinbase*, 602 U.S. at 149. Indeed, at oral argument—which took place after *Coinbase* had been decided—the businesses could not identify any way their arguments would be different if there were no promissory notes at all.

This is not simply a matter of semantics—it involves the nature of the claim the businesses are making and the basis on which they ask us to reverse the district court's judgment. We do not fault the businesses for failing to anticipate terminology the Supreme Court only later introduced in *Coinbase*. But we rarely consider arguments that were not raised in an appellant's opening brief, see, *e.g.*, *Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017), and the businesses identify no basis for doing so here. In fact, in their reply brief, the businesses do not challenge—or even mention—the bank's assertion that the businesses have not made what *Coinbase* calls a fourth-order argument because they "do not argue that the Promissory Note's venue provision superseded or narrowed the Deposit Agreement's arbitration provision." Bank Br. 36.[1]

## B.

We are also unpersuaded by the arguments that are properly before us.

The businesses describe the district court as concluding "there was an enforceable

---

[1] A single sentence in the businesses' opening brief asserted that they argued to the district court "that the inclusion of an integration clause" in the promissory notes had "clearly negated the enforceability of the delegation clause" in the deposit agreements. Bus. Br. 41. That type of "passing shot" is not enough to raise an issue for our review. *Grayson O Co.*, 856 F.3d at 316 (quotation marks removed).

agreement to arbitrate [the businesses'] claims" against the bank. Bus. Br. 1. In *Coinbase*'s terminology, that would be a second-order holding. But the district court made no such holding. Instead, the court made a third-order holding, ruling that the deposit agreements' arbitration provision "contains a valid and enforceable delegation clause" that requires the parties to "address threshold issues of arbitrability before the arbitrator." JA 723. Reviewing that decision de novo, see, *e.g.*, *Gibbs v. Haynes Investments, LLC*, 967 F.3d 332, 337 (4th Cir. 2020), we see no error.

It is common ground "that parties can agree to arbitrate gateway questions of arbitrability," including "whether their agreement [to arbitrate] covers a particular controversy." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010) (quotation marks removed). The Federal Arbitration Act says agreements to arbitrate are enforceable, see 9 U.S.C. § 2, and "[a]n agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce," *Rent-A-Center*, 561 U.S. at 70.

At the same time, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (alterations and quotation marks removed). A court must first determine for itself that "the parties have a contract that provides for arbitration of *some* issues." *Id.* at 945 (emphasis added); accord *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) ("[B]efore referring a dispute to an arbitrator," a court must "determine[] whether a valid arbitration agreement exists."). If so, the court must next determine whether that contract includes a "delegation clause" that

8

tasks the arbitrator with determining whether a particular controversy is covered by the parties' agreement to arbitrate. *Hengle v. Treppa*, 19 F.4th 324, 335 (4th Cir. 2021). "The clear and unmistakable standard is exacting, and the presence of an expansive arbitration clause, without more, will not suffice" to show a valid delegation. *Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union*, 665 F.3d 96, 102 (4th Cir. 2012) (quotation marks removed).

"If . . . the parties did *not* agree to submit the arbitrability question itself to arbitration, then the court should decide that question just as it would decide any other question that the parties did not submit to arbitration, namely, independently." *First Options*, 514 U.S. at 943. But if there is a valid delegation clause, "a court may not decide an arbitrability question that the parties have delegated to an arbitrator" "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 586 U.S. at 68, 69.

The district court followed those rules here. The court noted the parties conceded "that they have entered into the Deposit Agreement and that this agreement contains an arbitration provision." JA 724. The court next determined the arbitration provision "contains a delegation clause that clearly and unmistakably delegates the question of arbitrability to the arbitrator." JA 726. As support for that view, the court pointed to the language stating that "[t]he arbitrator . . . will decide questions of law and fact," "includ[ing] the applicability of this Resolving Claims Section and the validity of the deposit agreement." *Id.* And because the parties had agreed that an arbitrator would resolve "at least, the gateway issue of the arbitrability of [the businesses'] claims," the court

9

properly declined to decide whether the claims were in fact arbitrable and granted the bank's motion to compel arbitration. JA 728.

On appeal, the businesses offer two challenges to the district court's reasoning. We are not convinced by either one.

First, the businesses assert the deposit agreements' language is insufficiently clear to delegate arbitrability questions to the arbitrator.[2] Every court to have interpreted this exact provision has disagreed with that assertion,[3] and that streak will not end with us.

Both the Supreme Court and this one have treated similarly worded provisions as delegation clauses. In *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010), for example, the Supreme Court concluded the parties had delegated arbitrability where their contract said the arbitrator "shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this Agreement." *Id.* at 66. This Court has reached the same conclusion about clauses that tasked arbitrators with resolving "all disputes, including the scope and validity of this Arbitration Provision," "any

---

[2] The parties disagree about whether the businesses ever made this argument before the district court. We need not resolve that dispute because the fact that "the district court ruled on the question" means it is properly before us. *Billard v. Charlotte Cath. High Sch.*, 101 F.4th 316, 327 (4th Cir. 2024).

[3] See *Happy Puppy LA, Inc. v. Bank of Am., N.A.*, No. 2:23-CV-01354-JLS-PD, 2023 WL 6192702, at *5 (C.D. Cal. June 30, 2023); *T.M.B. Assocs., LLC v. Bank of Am., N.A.*, No. H-23-3937, 2024 WL 466802, at *2 (S.D. Tex. Jan. 2, 2024); *Informatech Consulting, Inc. v. Bank of Am. Corp.*, No. 20-CV-02892-VC, 2021 WL 242888, at *2 (N.D. Cal. Jan. 25, 2021); *Flint v. Bank of Am., N. A.*, No. 15-13006, 2016 WL 1444505, at *1, *5 (E.D. Mich. Apr. 13, 2016). At oral argument, the businesses could not identify any case holding that the language in the bank's deposit agreement was insufficient to delegate arbitrability questions. See Oral Arg. 16:45–17:12.

issue concerning the validity, enforceability, or scope of this Agreement or this Agreement to Arbitrate," or "[a]ll disputes . . . relating in any way to . . . the execution and delivery, construction or enforceability of this Agreement." *Hengle*, 19 F.4th at 332 (quotation marks removed) (first quote); *Gibbs*, 966 F.3d at 290 (quotation marks removed) (second quote); *Minnieland Priv. Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 867 F.3d 449, 452 (4th Cir. 2017) (quotation marks removed) (third quote).

The language here is not meaningfully different. Indeed, as in *Rent-A-Center*, the clause at issue says the arbitrator will resolve disputes about "the *applicability* of" the portion of the deposit agreements containing the arbitration provision. JA 196 (emphasis added). In contrast, the decisions the businesses rely on in arguing that the deposit agreements do not delegate arbitrability involved "broad" and "general" clauses that contained no language giving arbitrators authority to determine the applicability or validity of the arbitration provisions. *Carson v. Giant Food, Inc.*, 175 F.3d 325, 330 (4th Cir. 1999); see *Peabody Holding Co.*, 665 F.3d at 103. We thus agree with the district court's conclusion that the deposit agreements contain a delegation clause.

Second, the businesses insist the delegation clause is unenforceable because "they never agreed to arbitrate claims arising out of the Promissory Notes." Bus. Br. 42. But that is an argument about the scope of the arbitration provision—not the validity of the delegation clause—and the Supreme Court's decision in *Rent-A-Center* shuts down that sort of argument. Yes, a party who challenges a delegation clause's validity has a right to have a court decide that question, because arbitration is a creature of contract and a challenge to a delegation clause is a claim that the parties never validly agreed to have the

11

arbitrator decide arbitrability questions. See *Rent-A-Center*, 561 U.S. at 67–72. But *Rent-A-Center* makes clear that parties resisting arbitration cannot get out from under a delegation clause by attacking "the rest of the agreement to arbitrate" and instead must challenge "the validity of the delegation provision in particular." *Id.* at 71, 74. This rule "does not require that a party challenge *only* the . . . delegation provision," *Coinbase*, 602 U.S. at 151, and a party who "specifically challenge[s] a delegation clause . . . may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions," *Gibbs*, 966 F.3d at 338 (alterations and quotation marks removed). At the same time, a party seeking to evade a delegation clause's application must assert— and ultimately prove—that there is some defect that "render[s] *that provision*" illegal or otherwise unenforceable. *Rent-A-Center*, 561 U.S. at 74.

The businesses err in asserting that this rule is limited to situations where "the underlying contract" that contained the delegation clause is "in its entirety, an arbitration agreement." Bus. Br. 40. The Supreme Court disavowed any such distinction in *Rent-A-Center* by stating it "makes no difference" whether "the arbitration provisions" that include a delegation provision are "contained in contracts unrelated to arbitration" or are simply a freestanding arbitration agreement. 561 U.S. at 72. It is thus unsurprising that this Court has already applied *Rent-A-Center*'s rule to contracts that contain more than just an agreement to arbitrate. See *Minnieland Priv. Day Sch.*, 867 F.4th at 451, 455–56.

The businesses' briefs contain no argument that the delegation provision contained in the deposit agreements is itself unlawful or unenforceable. See *Rent-A-Center*, 561 U.S. at 74 (giving an example of what such a claim might look like). Instead, the relevant

12

sections of the businesses' briefs: (1) repeat arguments we have already rejected (that this provision is insufficiently clear and unmistakable to be a delegation clause and that it is enough that the businesses' challenge is specific to the arbitration clause as a whole); and (2) assert that the district court erred in concluding the businesses had not "specifically challenge[d] the validity of the delegation clause" before that court, JA 726 n.6. The same was true at oral argument, where the businesses could not identify any basis for challenging the validity of the delegation clause itself. See Oral Arg. 15:59–16:45. Because the businesses failed to mount a specific challenge to the delegation clause, we must—like the district court—treat that clause as controlling and "may not decide the arbitrability issue" ourselves. *Henry Schein*, 586 U.S. at 69.

### III.

The businesses also argue the district court committed legal error by dismissing their complaint rather than staying the suit pending arbitration. But the businesses never requested a stay here, and (subject-matter jurisdiction issues aside) we rarely reverse district court decisions for failing to do something the appealing party did not ask the court to do. See, *e.g.*, *United States v. Ravenell*, 66 F.4th 472, 494 (4th Cir. 2023).

The businesses invoke the Supreme Court's recent decision in *Smith v. Spizzirri*, 601 U.S. 472 (2024), but that case does not help them. In *Smith*, the Court held that "[w]hen a federal court finds that a dispute is subject to arbitration, *and a party has requested a stay of the court proceeding pending arbitration*, the court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Id.* at 475–76 (emphasis added). *Smith* says nothing about what happens when the appealing party never requests a

13

stay. We agree with the Seventh Circuit that *Smith* "does not require" an appellate court to vacate a "district court's dismissal order" under such circumstances. *National Cas. Co. v. Continental Ins.*, 121 F.4th 1151, 1153 (7th Cir. 2024).

*      *      *

The district court's judgment is

*AFFIRMED.*