UNPUBLISHED

COURT OF APPEALS OF VIRGINIA


Present:  Judges Beales, Ortiz and Chaney
Argued by videoconference


ADROIT HEALTH GROUP, LLC, ET AL.
                                                    MEMORANDUM OPINION* BY
v.        Record No. 0095-25-2                      JUDGE DANIEL E. ORTIZ
                                                         MARCH 3, 2026
DARLENE REEVES


               FROM THE CIRCUIT COURT OF NEW KENT COUNTY
                          B. Elliott Bondurant, Judge

          Noah J. DiPasquale (David N. Anthony; Troutman Pepper Locke
          LLP, on briefs), for appellants.

          Beth A. Norton (Norton Health Law, P.C., on brief), for appellee.


        Adroit Health Group, LLC ("Adroit"), American Business Association ("ABA"), and

National Congress of Employers, Inc. ("NCE") appeal the denial of their motion to compel

arbitration in a health insurance dispute filed by Darleene Reeves ("Darlene"). Appellants

contend the circuit court erred by interpreting Code § 38.2-312 to prohibit enforcement of

Adroit's mandatory arbitration clause. The applicability of Code § 38.2-312 requires both an

"insurer" and an "insurance contract." In this interlocutory appeal, we find that Darlene can be

compelled to arbitrate as against non-insurer parties, and we reverse the circuit court's judgment and

remand for a determination as to whether appellants are "insurers" within the meaning of the Code.

---

* This opinion is not designated for publication. See Code § 17.1-413(A).

BACKGROUND[1]

In September 2022, Darlene and her husband, Ray, conducted an online search for a health insurance plan. Over the course of two days, Ray spoke to Diana Gavin, a sales agent at Top Healthcare Options Insurance Agency ("Top Healthcare"),[2] who advised Ray on the purchase of what he believed to be full-coverage health insurance for Darlene and the couple's son. On September 29, 2022, Ray purchased a plan online through Adroit's online platform while being directed by Diana over the phone. During that call, Ray actually enrolled Darlene in a supplemental health insurance plan (the "Impact 750 Plan") without reading the Enrollment Agreement's (the "Agreement") contents.

The Impact 750 Plan, underwritten by American Financial Security Life Insurance Company (AFSLIC), insured Darlene through a membership in a group health insurance plan issued to NCE. Despite its classification as a supplemental coverage plan, Diana represented that the Impact 750 Plan would provide substantial insurance coverage.[3] When Darlene became ill and

_____

[1] We view the evidence in the light most favorable to the prevailing party below—in this case, Darlene—according to well-established principles of appellate review. *City-To-City Auto Sales, LLC v. Harris*, 78 Va. App. 334, 348 (2023).

[2] Top Healthcare is "one of the third-party marketing producers which has contracted with [Adroit] to market the associations' memberships to consumers and to enroll new members."

[3] The Impact 750 Plan contained an all-caps disclaimer that the plan is supplemental, rather than major medical insurance. Exact language to this effect is on the third page of the Agreement:

> Impact Health Limited Medical plan is made available through the National Congress of Employers and offers affordable benefits designed for individuals and families who need basic, routine wellness coverage or expanded coverage to help address day-to-day health care expenses.
>
> . . . .
>
> THIS IS A SUPPLEMENT TO HEALTH INSURANCE AND IS NOT A SUBSTITUTE FOR MAJOR MEDICAL COVERAGE. LACK OF MAJOR MEDICAL COVERAGE (OR OTHER

received in-patient hospital care in early 2023, she discovered the reimbursement anticipated under her Impact 750 Plan was to be "categorically denied" by her treating hospital, which she had previously been assured was an in-network provider. Realizing this, Ray contacted Top Healthcare to purchase an upgrade under the same group policy (the "Impact 1000 Plan") which he erroneously believed would provide 100% medical coverage for Darlene moving forward.[4] Once again, the hospital denied the plan, leaving Darlene responsible for covering substantial medical bills of over $75,000. Her suit followed.

On March 1, 2024, Darlene filed her complaint against Diana, Top Healthcare, Adroit, ABA, AFSLIC, and NCE. She pled counts of fraud, constructive fraud, civil conspiracy, breach of contract, unjust enrichment and a violation of the Virginia Consumer Protection Act. Darlene argues that Adroit is the center of a "sales scheme . . . [which] required consumers to purchase memberships in multiple third-party organizations, including ABA and NCE" which provided no meaningful insurance-related benefits.

But the Agreement for Darlene's Impact plans included an arbitration clause. The twelfth page of the Agreement contains the mandatory arbitration provision at issue, which stated that "Member and the Company and its affiliates agree that any claim, dispute, or controversy ('Claim') between them . . . shall be resolved by binding arbitration by the American Arbitration

---

MINIMUM ESSENTIAL COVERAGE) MAY RESULT IN AN ADDITIONAL PAYMENT WITH YOUR TAXES.

[4] The applications for both Impact plans purchased on Darlene's behalf are collectively "the Agreement" herein. Both incorporated the same arbitration clause. Both also specified the charges to be paid for each program enrollment. Further, each prominently disclaimed their purposes as "enroll[ment] in/applying for benefits or services." The upgrade under the Impact 1000 Plan included additional monthly charges for the ABA Goodlife Plus program ($99.95/month) and monthly charges for re-enrolling in the ABA "Protect Plus" and CBA "Lifestyle" programs. None of the additional fees were earmarked for Adroit, the plan's "customer service team."

Association ('AAA'), pursuant to the Commercial Arbitration Rules of the AAA." On August 29, 2024, Adroit, NCE and ABA (collectively, "appellants") accordingly moved to compel arbitration.[5] In doing so, they cited Darlene's "voluntary, binding contractual agreement" to pursue arbitration with Adroit, with ABA and NCE included as "intended third-party beneficiaries." Darlene opposed appellants' motion, arguing that the arbitration provision was void under Virginia law.

During the November 19, 2024 hearing on appellants' motion to compel arbitration, the circuit court heard argument from both parties. Appellants argued that the plain language of the Agreement contractually bound Darlene to arbitrate her claims against Adroit, ABA, and NCE. Darlene argued that Adroit acts as an insurance servicer under the Agreement, and thus Code § 38.2-312 prohibits enforcement of the arbitration provision. Acknowledging Adroit's agency agreement with AFSLIC, the appellants argued that Adroit, as NCE's plan administrator, acted in a purely management capacity and did not perform insurance services. Adroit cited its contractual arrangements with both ABA and NCE which delegate to Adroit "administrative functions for enrollment of new members . . . [and for] membership billing functions." But Darlene's counsel explained that the various policies and documents obtained through discovery made understanding each defendant's identity in the insurance transaction "a very confusing situation to try to parse out."

In a letter opinion dated December 6, 2024, the circuit court held that Code § 38.2-312 prohibited the enforcement of the arbitration provision against Darlene. Reasoning that "[a]ll the documents as a whole point to [appellants] being involved in the insurance transaction and the

---

[5] As the issuer of NCE's group insurance policy (Group Accident and Sickness Hospital Indemnity Insurance Certificate of Coverage), AFSLIC presumably did not seek to compel arbitration because Code § 38.2-312 barred them from doing so. Neither Diana nor Top Healthcare were in privity of contract under the Agreement, so they could not join the motion to compel arbitration either.

insurance business," the circuit court took the contractual agreements between Adroit, AFSLIC, and NCE as factual support for its denial of appellants' motion. In recognition of their roles in the insurance transaction, Diana, Top Healthcare, and AFSLIC did not attempt to compel arbitration. Notably, the court did not make any factual determinations as to whether Adroit, ABA, and NCE are "insurers." The court then issued its order denying appellants' motion to compel arbitration on January 8, 2025. Appellants timely filed this interlocutory appeal.

ANALYSIS

On appeal, appellants assign error to the circuit court's refusal to enforce the Agreement's arbitration provision, arguing that Code § 38.2-312 does not apply.[6] Below we find that the Agreement is an "insurance contract" subject to Code § 38.2-312 but require further factual findings to determine whether appellants are "insurer[s]" within the statute's meaning.

I. Standard of Review

We review "a circuit court's interpretation of contractual language . . . de novo." *Brush Arbor Home Constr., LLC v. Alexander*, 297 Va. 151, 154 (2019). Although the Federal Arbitration Act (FAA) and Virginia Uniform Arbitration Act (VUAA) typically govern arbitration agreements in Virginia, the presumption in favor of arbitrability is not operable in the health insurance context.[7] This is because, under the McCarran-Ferguson Act, the FAA can be reverse-preempted by state insurance laws which specifically regulate the business of insurance. 15 U.S.C. §§ 1011-15. In Virginia, the General Assembly has chosen to do this by enacting a statute which prevents insurance contracts from depriving the Commonwealth of jurisdiction against insurers. The relevant language of the Code is as follows:

---

[6] The denial of a motion to compel arbitration is immediately appealable. Code § 8.01-581.016.

[7] For the text of the FAA and VUAA, *see* 9 U.S.C. § 2; Code § 8.01-581.03.

> No insurance contract delivered or issued for delivery in this Commonwealth and covering subjects which are located or residing in this Commonwealth, or which are performed in this Commonwealth shall contain any condition, stipulation or agreement . . . [d]epriving the courts of this Commonwealth of jurisdiction in actions against the insurer.

Code § 38.2-312(2). We review questions of statutory interpretation de novo. *Jones v. Commonwealth*, 296 Va. 412, 414-15 (2018).

    II. Interpretation of Code § 38.2-312

"The primary objective of statutory construction is to 'determine the General Assembly's intent from the words contained in [the] statute.'" *Turner v. Commonwealth*, 65 Va. App. 312, 323 (2015) (alteration in original) (quoting *Washington v. Commonwealth*, 272 Va. 449, 455 (2006)). In interpreting statutory language, courts in this Commonwealth have long recognized the competency of the legislature to "choose its words with care." *Miller & Rhoads Bldg., LLC v. City of Richmond*, 292 Va. 537, 544 (2016) (quoting *Va. Dep't of Health v. NRV Real Estate, LLC*, 278 Va. 181, 188 (2009)). Code § 38.2-312 acts to void arbitration provisions which *both* (i) are contained within an "insurance contract" *and* (ii) deprive this court of jurisdiction against the "insurer." Appellants, however, argue that Code § 38.2-312 does not apply because they are not insurers, nor is the Agreement an "insurance contract" within the meaning of the statute. We turn now to statutory interpretation.

In enacting Code § 38.2-312, the legislature reflected "a state policy choice that insureds should have the option to seek enforcement of Virginia's insurance laws and regulations in court." *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assur.*, 867 F.3d 449, 457 (4th Cir. 2017).[8] Darlene argues that *Minnieland* voids arbitration provisions in insurance contracts against *all* parties related to an insurance transaction. In *Minnieland*, however, the Fourth

---

[8] Fourth Circuit decisions are persuasive, but not binding, on this Court. *Harris v. Wash. & Lee Univ.*, 82 Va. App. 175, 202 (2024).

- 6 -

Circuit ruled on an arbitrator's authority to determine whether the contract at issue constitutes an "insurance contract" for purposes of the statute. *Id.* at 456. The decision did not address the question of what qualifies as an action "against the insurer" under Code § 38.2-312. If the General Assembly had intended to preserve jurisdiction against *all* parties to an insurance contract, it would not have qualified the statutory language with the phrase "against the insurer." *See Commonwealth v. Morris*, 281 Va. 70, 79 (2011) (when construing "clear and unambiguous language . . . we read it to mean what it says" (quoting *Blowe v. Peyton*, 208 Va. 68, 74 (1967))). Darlene's proposed construction is not supported by the statutory text and would thwart the legislative intent by expanding the scope of the statute to void arbitration provisions in insurance contracts against *all* parties related to an insurance transaction.

A. "Insurance Contract"

The Enrollment Agreement is an insurance contract under the Code. Section 38.2-312 only applies to "insurance contracts," but this term is not defined under Title 38.2. When interpreting statutory language, our courts have long recognized the competency of the legislature to "choose its words with care." *Miller & Rhoads Bldg., LLC*, 292 Va. at 544 (quoting *NRV Real Estate, LLC*, 278 Va. at 188). An undefined statutory term can be defined using the standard dictionary definition. *Eberhardt v. Commonwealth*, 74 Va. App. 23, 32 (2021).

The *Black's Law Dictionary* entry for "insurance contract" directs to the term "insurance policy," which is defined as "[a] contract of insurance, including the insured's application, the declarations page, the coverage forms, and any endorsements or riders that amend them." *Insurance Policy*, *Black's Law Dictionary* (12th ed. 2024). In this context, an insurance contract includes applications, the contract itself, and any amendments. Several elements of the Agreement place it squarely within this definition. First, the Agreement is affixed with an "application" label. It describes the product to be purchased as "basic, routine wellness coverage

or expanded coverage to help address day-to-day health care expenses." Just before the signature section, language confirms that Darlene elected to apply for, among other products, membership in an Impact Health plan. Beyond the language of the Agreement itself, related documents also support this conclusion. NCE's group policy itself defines "policy" as "the entire contract," including "the application(s), if any." The Agreement served as Darlene's application for health insurance coverage under NCE's group policy. Under this definition, the Agreement is an insurance contract, and thus Code § 38.2-312 applies. We therefore must determine whether each appellant is an "insurer" as contemplated by Code § 38.2-312.

B. "Insurer"

Code § 38.2-312 voids only arbitration agreements in insurance contracts which "depriv[e] [us] of jurisdiction in actions *against the insurer*." (Emphasis added). As discussed above, this phrasing reflects a state policy choice allowing insureds to seek enforcement of Virginia insurance laws against insurers in court. *See Minnieland*, 867 F.3d at 457. As the "person covered by an insurance policy" under the Impact plans, Darlene is clearly an "insured" within the meaning of the Code and is entitled to seek enforcement of insurance laws against her insurer(s) in court. Code § 52-56. AFSLIC, as the issuer of NCE's "Certificate of Insurance," is clearly an "insurer" within the meaning of the statute. Appellants, on the other hand, contend they are not "insurers" within the meaning of the Code. Because we lack the requisite factual findings on appeal, we remand for further factual determination by the circuit court.

The phrase "against the insurer" acts to qualify the parties against which the Commonwealth retains jurisdiction under Code § 38.2-312. 2A Sutherland, *Statutory Construction* § 47:33 (7th ed. 2024). For the purposes of Title 38.2, "insurer" is defined as "an insurance company," which is defined in turn as "any company engaged in the business of making contracts of insurance." Code § 38.2-100. Further, the "business of insurance" is

statutorily defined as "includ[ing the] solicitation, negotiations preliminary to execution, execution of an insurance contract, and the transaction of matters subsequent to execution of the contract and arising out of it." *Id.* Based on the language of the Code, an insurer is a company which solicits, negotiates, executes, and transacts in matters related to an insurance contract.

Adroit was held below to be "a licensed insurance agency . . . acting as a broker." Although Darlene contends that Adroit is an insurer that "sells insurance products," Virginia law notes the distinction between "insurance brokers" and "insurers." Our Supreme Court has defined an insurance broker as a "middleman" between insured and insurer. *Pacific Fire Ins. Co. v. Bowers*, 163 Va. 349, 354 (1934). An insurance broker is normally "employed by the person seeking the insurance, and, when so employed, is to be distinguished from the ordinary insurance agent, who is commissioned and employed by the insurance company to solicit and write insurance by and in the company." *Id.*

The record reflects that Adroit is an insurance broker. In the absence of supporting allegations or a factual finding by the circuit court, we cannot determine whether Adroit is an insurer based on the record before us.[9] Adroit "operates an enrollment and billing platform for membership in third-party associations . . . [and] does not offer insurance coverage itself; rather, it helps these membership associations to enroll and bill members." Adroit characterizes itself as having no further involvement in the insurance transaction beyond acting as an enrollment facilitator for NCE. Under Adroit's non-exclusive contract with NCE, Adroit is charged to "manage, support, and contract agencies to market membership in some of the NCE Programs" to enroll new NCE members. Both NCE and ABA also contracted with Adroit to delegate "administrative functions for enrollment of new members by third-party sales producers."

---

[9] The circuit court should note that licensure is not dispositive of "insurer" status: other states, unlike the Commonwealth, require a corporation to hold an insurance license to act as an insurance broker, and Adroit's operations in "over 40 states" should also be considered.

Adroit also has an agency agreement with AFSLIC to, among other duties, assume responsibility for "plan administration."

NCE is the named policyholder for the AFSLIC group health insurance policy under which Darlene purchased health coverage. NCE is the named policyholder—rather than the underwriter—on the AFSLIC group insurance policy. NCE is a purchaser of "insurance" as defined in Code § 38.2-100 and it is impossible to play the role of both *insurer* and *insured* in the same insurance transaction.

ABA is a subsidiary of Adroit which operates as a membership association. Although by its inclusion in the Agreement it is a party to the insurance transaction at issue, ABA solely provides non-insurance products, as conceded by both parties. But the circuit court did not make any factual findings specifically related to ABA.

Given the record before this Court, it is impossible to know whether to label Adroit, NCE, and ABA as "insurers." In the absence of any findings of fact to the contrary, we are unable to determine whether arbitration should be denied. This compels us to reverse and remand the matter for further factual determination by the circuit court on remand.

CONCLUSION

Code § 38.2-312 mandates the circuit court's retention of jurisdiction against insurers, but the court below failed to make the necessary factual determinations to enable our review with regard to whether Adroit, NCE, and ABA are "insurers." Thus, the circuit court erred. We reverse and remand to the circuit court with instructions to make factual findings consistent with this opinion.

*Reversed and remanded.*